CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 0 7 2014
JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CHADRIQUEZ WILLIAMS, | ) | |
| | ) | Criminal No. 4:09cr00039 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |
| Respondent. | ) | |

Petitioner Chadriquez Williams, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 motion challenging his jury conviction and sentence of 360 months for possession of marijuana with intent to distribute and possession of a firearm during and in relation to a drug trafficking offense. Williams asserts seven grounds for relief, including five different ineffective assistance of counsel claims, four due process claims, a Sixth Amendment fair trial claim, and a claim under Alleyne v. United States, 133 S. Ct. 2151 (2013). This matter is before the court on the Government's motion to dismiss. The court finds that two of Williams' ineffective assistance of counsel claims cannot be decided without first conducting a hearing to resolve certain conflicts of fact. Williams' remaining claims, however, fail either procedurally or on the merits and are therefore dismissed. Accordingly, the Government's motion to dismiss is granted in part and denied in part.

I.

On November 12, 2009, a grand jury indicted Williams on three counts, one count of distributing marijuana, in violation of 21 U.S.C. § 841(a)(1), (Count One) and two counts of possessing a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)

(Counts Two and Three). The court appointed counsel to represent Williams. Williams discussed the charges with his attorney and eventually decided that he should proceed to trial. According to the Government's evidence at trial, Omar Turner went to Williams' residence to purchase marijuana. The transaction went awry when Turner grabbed the marijuana and ran out of the residence. Williams pursued Turner and fired a handgun at Turner as he fled. Turner escaped and returned to his apartment complex where he met with his friend Michael Hudson. A short time later, Turner and Hudson were walking outside the apartment complex when Williams and his associate Joseph Hairston arrived in a car. According to the Government's evidence, Williams jumped out and began firing a high powered rifle at Turner. Turner escaped unharmed but Hudson was struck multiple times and seriously injured. Williams and Hairston fled the scene. Williams testified in his defense and admitted to the drug transaction but denied ever shooting at Turner, much less being at the scene of the second shooting. Although, in the light most favorable to the Government, the evidence showed that Williams fired the shots that wounded Hudson, alternatively, the jury could have concluded that Hairston fired the shots that struck Hudson and that Williams was aiding and abetting that conduct. Accordingly, the court instructed the jury on aiding and abetting. After a three-day trial, a jury found Williams guilty of all three counts.

The court then imposed a 438-month sentence (18 months for Count One, and mandatory consecutive terms of 120 months for Count Two and 300 months for Count Three), and Williams appealed. Prior to the resolution of Williams' appeal, however, the United States successfully moved to remand the case so it could dismiss Count Three pursuant to a Department of Justice Policy against prosecuting successive § 924(c) violations relating to the same drug trafficking offense. A new presentence report was prepared, showing a guideline sentencing range of 360

months to life with a ten year mandatory minimum under Count Two for discharging a firearm in furtherance of Count One. The presentence report calculated the guideline range in accordance with U.S.S.G. § 4B1.1(c)(3) because the defendant was determined to be a career offender and was also convicted of a § 924(c) violation. The court adopted the presentence report without modification and imposed a 360-month sentence (18 months for Count One and 342 months for Count Two). Williams again appealed and argued that the district court committed reversible error when it: (1) classified him as a career offender; (2) instructed the jury on an aiding and abetting theory of guilt; and (3) increased the sentence attributable to his first § 924(c) conviction from 120 months to 342 months. Williams was thus resentenced, *de novo*, on October 17, 2011 on only counts one and two. The Fourth Circuit found no error and affirmed. Williams did not pursue a writ of certiorari from the Supreme Court of the United States.

II.

Williams now asserts that: (1) his counsel failed to properly advise him of the risks of going to trial, and had counsel done so, he would have pled guilty; (2) his counsel failed to call to the court's attention that he was improperly observed by three jurors in prison garb as he passed through a hallway during the jury voir dire, which also allegedly impaired his right to a fair trial; (3) his counsel failed to impeach government witnesses with prior inconsistent statements; (4) the court improperly gave an aiding and abetting instruction, and his counsel did not advise him he could be convicted as an aider and abettor; (5) the guideline calculations were erroneous, and his counsel failed to object thereto; (6) the court imposed a vindictive sentence; and (7) the court violated the rule in <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013) by imposing a mandatory minimum based on the court's finding that Williams discharged the firearm.

III.

Williams asserts five different ineffective assistance of counsel claims, which are also intertwined with three due process claims and a Sixth Amendment fair trial claim. The court concludes that two ineffective assistance of counsel claims merit an evidentiary hearing but rejects the others on the merits.

To establish a claim of ineffective assistance, a petitioner must show both deficient performance and prejudice. Strickland v. Washington, 466 U.S. 668, 669 (1984). A court's evaluation of deficient performance is "highly deferential." Strickland, 466 U.S. at 689. And courts apply a strong presumption that counsel's performance was within the "wide range" of reasonable professional assistance. Id.; see also Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977). To overcome this presumption, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. That is, the representation must fall below an objective standard of reasonableness, amounting to "incompetence under 'prevailing professional norms.'" Premo v. Moore, 131 S. Ct. 733, 740 (2011) (quoting Strickland, 466 U.S. at 690). With respect to prejudice, a petitioner must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' i.e., that he would have been found not guilty." Burr v. Lassiter, 513 Fed. Appx. 327, 340 (4th Cir. 2013) (citing Strickland, 466 U.S. at 694). The likelihood of a different outcome must be "substantial," not merely "conceivable." Harrington v. Richter, 131 S. Ct. 770, 787 (2011).

A.

Williams claims that his counsel provided ineffective assistance by failing to show him a copy of a plea offer and instead advising him to go to trial because he would receive the same sentence in any event. The court will have to hold an evidentiary hearing because it is disputed whether the Government actually offered Williams a favorable plea agreement. The court will therefore deny the Government's motion with respect to this claim, pending the results of that hearing.[1]

B.

Williams claims that his counsel provided ineffective assistance by failing to apprise the court that he inadvertently appeared in prison garb and shackles before three jurors in a hallway before trial. Finding that Williams cannot demonstrate that the chance encounter prejudiced him, the court will dismiss the claim.

A defendant in a criminal trial may not be required to wear prison garb before a jury over his objection. Estelle v. Williams, 425 U.S. 501, 503-05 (1976). Counsel's failure to object, then, could not have been driven by any reasoned strategic or tactical decision. But deficient performance alone is not enough. Williams must still show prejudice. Williams argues that prejudice should be presumed in light of Deck v. Missouri, 544 U.S. 622 (2005). However, Williams reads Deck too broadly. In Deck, the Supreme Court concluded that it was presumptively prejudicial to require a defendant, without adequate justification, to wear shackles *during trial*. Id. at 635. The Court said nothing about the use of shackles (or any other physical

---

[1] The court notes, however, that Williams' assertion seems problematic in at least one respect. Williams denied at trial ever firing or even brandishing a firearm. Thus, it is highly unlikely that the court would have accepted a guilty plea if Williams denied the factual basis to support the plea.

5

restraint or prison garb) during the transport of an inmate.[2] Therefore, because Williams was not compelled to wear prison garb or shackles *at trial* (Williams appeared in business attire), the holding in Deck does not apply, and the court will not presume any prejudice.[3]

With no prejudice presumed, Williams must show that there was prejudice in fact, i.e., there was a substantial likelihood of a different result had counsel objected to the selection of three jurors who observed Williams in shackles. See Strickland, 466 U.S. at 694. Williams cannot do so. Williams was compelled to wear prison garb and shackles as part of a routine custody measure. By happenstance, three jurors inadvertently saw him. Although had counsel objected, the court may have excused these three individuals from the jury panel, it cannot be said that their brief, momentary exposure to the defendant in such circumstances created a "consistent reminder" and a "continuing influence throughout the trial," such that Williams did not receive a fair and reliable result. See Estelle v. Williams, 425 U.S. at 504-05 (finding relevant not the mere fact of exposure but its duration in evaluating defendant's constitutional rights).

Furthermore, a different result was unlikely because the evidence upon which Williams was convicted was robust. Williams, who testified in his defense, admitted, at a minimum, that he helped facilitate a drug transaction that eventually went awry. As for the two § 924(c) charges, the Government introduced considerable evidence as to both, including eye witnesses who observed each shooting and physical evidence that corroborated their accounts. Therefore,

---

[2] See State v. Swopes, 343 S.W.3d 705, 710 (Mo. Ct. App. 2011) (finding that "Deck is not directly implicated if the jury is briefly and inadvertently exposed to a defendant in handcuffs.").

[3] There are three other instances in which prejudice is presumed. None apply here. See Smith v. Robbins, 528 U.S. 259, 287 (2000) (recognizing presumption of prejudice for (1) a denial of counsel, (2) state interference with counsel's assistance, and (3) an actual conflict of interest).

Williams cannot show a reasonable probability of a different outcome had counsel brought the matter to the court's attention, and the court will dismiss the claim.[4]

C.

Williams claims that his counsel provided ineffective assistance by failing to impeach two government witnesses with prior inconsistent statements. According to Williams, Omar Turner and Joseph Hairston previously testified at a bond hearing and a preliminary hearing, respectively, that Williams was not the shooter.[5] However, that is simply not the case. Neither Turner nor Hairston ever testified that Williams was not the shooter. Rather, Turner testified consistently that Williams definitely shot at him over some marijuana outside Williams' residence and *may have* been the shooter in the second incident near his apartment. Trial Tr. 66:14-73:9, ECF No. 91 at 66-73; Bond Hr'g 15:22-16:1, ECF No. 126-3 at 4. Similarly, Hairston testified consistently that he drove Williams to Turner's apartment complex and upon arrival, Williams jumped out of the car, screamed an expletive, and began firing approximately twenty or more rounds of a high caliber rifle at Turner, who happened to be walking outside at

---

[4] In addition to his ineffective assistance of counsel claim, Williams asserts that the three jurors' viewing of him in shackles and prison garb deprived him of his Fifth Amendment right to due process and his Sixth Amendment right to a fair trial. However, these claims fail for the same reasons and will also be dismissed. See Estelle, 425 U.S. at 503-13; see also Murphy v. Johnson, 2010 WL 331762, at *2 (E.D. Va. Jan. 26, 2010) (finding that the court did not err in failing to declare a mistrial after the jury allegedly observed the defendant in the custody of a bailiff during trial); Lakin v. Stine, 431 F.3d 959, 965-66 (6th Cir. 2005) (finding harmless error because the evidence of guilt was overwhelming even though defendant represented himself at trial and was forced to shuffle around the courtroom in leg iron shackles).

[5] Williams also alleges both Turner and Hairston testified previously that they did not purchase drugs from Williams. However, Turner did not testify whether or not he purchased drugs at the bond hearing. He said only that there was a first shooting "about some marijuana." Bond Hr'g 15:23-24, ECF No. 126-3 at 4. And Hairston likewise did not testify at the preliminary hearing whether or not he (or anyone else) was involved in a drug transaction. Hairston stated only that Turner had wrongfully obtained some of Williams' marijuana. Prelim. Hr'g 23:24-24:8, ECF No. 126-2 at 7 ("Omar got some of Chad's marijuana" and was not supposed to have it). (Hairston's testimony at trial was that he had seen Williams sell marijuana practically every day. See Trial Tr. 191:11-17, ECF No. 92 at 23.)

7

the time with his friend Michael Hudson. Trial Tr. 114:19-115:4, ECF No. 91 at 114-15; Bond Hr'g 18:16-19:3. Williams' arguments are therefore without merit,[6] and the court will dismiss the claim.[7]

D.

Williams claims that his counsel provided ineffective assistance by failing to forewarn him that he could be convicted on an aiding and abetting theory if he proceeded to trial. According to Williams, had counsel properly advised him, he would not have proceeded to trial but would have pled guilty. Because it is unclear whether counsel apprised Williams of this risk and whether Williams would have actually pled guilty had counsel so advised him,[8] the court will deny the Government's motion and hold an evidentiary hearing.[9]

---

[6] If anything, it would have been more harmful for counsel to bring up Turner's prior testimony because, at the bond hearing, Turner actually identified Williams as the second shooter and only later clarified that he really was not sure. On the other hand, at trial, Turner did *not* specifically identify Williams as the second shooter. See Bond Hr'g 17:24-18:2, ECF No. 126-3 at 5 ("Having read this, do you recall who you saw shooting? Yes, sir. And who was it? Mr. Williams.").

[7] In addition, counsel did impeach each witness on other, adequate grounds. For instance, counsel alleged that Hairston was not trustworthy because he changed his story (ECF No. 92 at 220), was not forthcoming in the investigation, (Id. at 226-28), and was unreliable because the police suggested information to him (Id. at 228-32). With regards to Turner, counsel pointed out that he was previously convicted for misdemeanor larceny (ECF No. 91 at 87-88); was not forthcoming in the investigation (Id. at 93-94); was under the influence of drugs during the second shooting and did not have his glasses, tainting his ability to see, perceive, and remember (Id. at 94-95); changed his story and was generally inconsistent (Id. at 95-96); and was treated favorably by the government who chose not to charge him with possession and/or distribution of marijuana as a result of his aid in the investigation (Id. at 104-05). "A hindsight review of any cross-examination will unquestionably reveal an opportunity to ask one more question or highlight one more point; however, in the midst of a trial with an adverse witness on the stand, a lawyer must always make split-second decisions as to how to best shape his questioning in order to extract the most desirable responses." Yarbrough v. Johnson, 490 F. Supp. 2d 694, 738-39 (E.D. Va. 2007).

[8] If Williams' version of events were true, he in fact could not have been found guilty as an aider and abettor.

[9] Williams also claims his Fifth Amendment due process rights were violated when the government argued an aiding and abetting theory for the first time in its closing arguments

E.

Williams claims that his counsel provided ineffective assistance by failing to object to and appeal an allegedly erroneous calculation of his sentence under the U.S. Sentencing Guidelines. According to Williams, the court erred by determining Williams' guideline range under U.S.S.G. § 4B1.1(b), and it should have applied § 4B1.1(c). This claim is plainly without merit. The court in fact sentenced Williams based on § 4B1.1(c). Thus, the calculation was not erroneous, counsel's performance was not deficient, and the court will dismiss the claim.[10]

IV.

Williams asserts that the court imposed a vindictive sentence and that the court violated the rule in Alleyne by imposing a mandatory minimum based on facts not found by the jury. The court dismisses both claims.

A.

Williams claims the court imposed a vindictive sentence in violation of his Fifth Amendment Due Process rights. This issue has already been addressed in the court's previous memorandum opinion. United States v. Williams, No. 9-39 (W.D. Va. July 24, 2013) (finding

---

(allegedly a "constructive amendment" of the indictment). However, this argument has already been raised and decided on direct appeal. United States v. Williams, No. 10-5131 (4th Cir. May 31, 2012) (noting that "[a]n aiding and abetting instruction is permissible where the evidence establishes that a defendant assisted in the commission of a crime, *even if he was charged as a principal.*") (emphasis added); see also United States v. Ashley, 606 F.3d 135, 143 (4th Cir. 2010) ("[A]iding and abetting liability need not be charged in an indictment" because it does not set forth an essential element of the offense or create a separate offense). Issues fully considered on direct appeal may not be recast under the guise of a collateral attack by way of a motion to vacate or correct a sentence. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Therefore, the court will also dismiss this claim.

[10] Williams also claims that his sentence was erroneous because his status as a career offender is based on prior state convictions that were allegedly obtained in violation of his Sixth Amendment right to effective assistance of counsel. Although Williams alleges a slightly new theory, Williams previously argued on direct appeal that he should not be classified as a career offender. Williams, No. 10-5131. Thus, the issue is not subject to collateral review and will also be dismissed. See Boeckenhaupt, 537 F.2d at 1183.

that the sentence was not vindictive because the court did not increase Williams' sentence but in fact reduced it and because the court simply adhered to the conduct-based sentencing scheme implemented by 18 U.S.C. § 3553(a) and the advisory sentencing guidelines when it took into account Williams' efforts to kill another person and to inflict grievous bodily injury with the use of an AK-47 or similar caliber weapon). Accordingly, the court will dismiss the claim.

B.

Williams claims the court violated the rule in Alleyne (which was decided after the court sentenced Williams and after his conviction became final) when it found at sentencing that Williams discharged a firearm, increasing his mandatory minimum sentence from five to ten years. The Court in Alleyne overruled its decision in Harris v. United States, 536 U.S. 545 (2002), and announced a "new rule" that any fact that increases a mandatory minimum sentence must either be admitted by the defendant or found by the jury beyond a reasonable doubt. Id. at 2163. When the Supreme Court announces a "new rule," that rule applies to all criminal cases still pending on *direct review*. Griffith v. Kentucky, 479 U.S. 314, 328 (1987). However, new procedural rules[11] are generally *not* retroactively applicable to cases on collateral review. Schriro v. Summerlin, 542 U.S. 348, 352 (2004). Retroactive effect is given "to only a small set of 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." Id. (quoting Saffle v. Parks, 494 U.S. 484, 494 (1990)). No lower court has held that Alleyne qualifies as a new "watershed rule of criminal procedure." See, e.g., Schoultz v. United States, 2013 WL 6512657, at *3-4 (D.S.C. Dec. 12, 2013); Harvell v. United

---

[11] Because this rule does not alter the range of conduct or class of persons subject to criminal punishment but merely alters the manner in which a sentence is to be computed, it is a procedural rather than substantive change in the law. Sanders v. Wilson, 2013 WL 3991469, at *3 (E.D. Va. Aug. 2, 2013) (citing United States v. Powell, 691 F.3d 554, 559-60 (4th Cir. 2012)).

States, 2013 WL 6050970, at *3 (W.D.N.C. Nov. 15, 2013); Mingo v. United States, 2013 WL 4499249, at *2 (W.D. Mich. Aug. 19, 2013); United States v. Potter, 2013 WL 3967960, at *3 (E.D. Ky. July 31, 2013). Indeed, Apprendi v. New Jersey, 530 U.S. 466 (2000), on which Alleyne was based, did not create a new watershed rule, and there is no reason to conclude that Alleyne requires a different result. See United States v. Sanders, 247 F.3d 139, 148 (4th Cir. 2001) (noting that "a rule that merely shifts the fact-finding duties from an impartial judge to a jury clearly does not fall within the second Teague exception" (citing Neder v. United States, 527 U.S. 1, 119 S. Ct. 1827 (1999)); see also Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013) (holding that because Alleyne is an extension of Apprendi, which does not apply retroactively, the Alleyne decision does not apply retroactively); In re Payne, 733 F.3d 1027, 1030 (10th Cir. 2013) (same). Accordingly, the new rule announced in Alleyne is not retroactively applicable to cases on collateral review, and because Williams' claim is on collateral review, the court will dismiss the claim.

V.

For the reasons stated, the court grants the Government's motion to dismiss in part and denies it in part.

**ENTER**: February 7, 2014.

s/ Samuel G. Wilson<br>UNITED STATES DISTRICT JUDGE