**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Petitioner,** | ) | **Action No.: 4:09-CR-00039** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHADRIQUEZ DEVON WILLIAMS,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States Magistrate Judge** |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Petitioner Chadriquez Williams ("Williams") filed a Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255, contending that he received ineffective assistance of counsel because his attorney (1) failed to convey a plea agreement from the Government and (2) failed to advise that he may be held criminally liable through an aiding and abetting theory. I conducted an evidentiary hearing upon the District Judge referring Williams's motion to me for disposition pursuant to 28 U.S.C. § 636(b)(1). I have considered the evidence presented, the legal arguments of counsel, and the applicable law. I conclude that Williams has failed to establish that he received constitutionally ineffective assistance of his counsel, and therefore **RECOMMEND DENYING** Williams's motion to vacate. Dkt. No. 126.

### I.  Procedural History

On November 12, 2009, a federal grand jury returned a three count indictment charging Williams with one count of possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (Count One) and two counts of discharging a firearm in relation to a drug

trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts Two and Three). Dkt. No. 3. Because Williams had a prior drug trafficking conviction, he faced up to 10 years of incarceration on the marijuana charge and a mandatory minimum of 10 years on each firearms charge. 18 U.S.C. § 924(c)(1)(A)(iii); 21 U.S.C. § 841(b)(1)(D). On August 4, 2010, a jury convicted Williams on all three counts (Dkt. No. 64) and the District Court later sentenced Williams to 18 months on Count One, 120 months on Count Two, and 300 months on Count Three, all to be served consecutively. Dkt. No. 77.

On appeal, the Government moved to remand the case to the District Court to dismiss one of the § 924(c) counts to comply with the U.S. Department of Justice policy prohibiting multiple § 924(c) charges based on a single predicate drug trafficking offense. Dkt. No. 103. The Fourth Circuit remanded for this purpose, and the District Court later granted the Government's motion to dismiss Count Three. Dkt. No. 105. The District Court resentenced Williams to 18 months on Count One and 342 months in prison on Count Two on October 18, 2011. Dkt. No. 108. Williams again appealed after resentencing, and the Fourth Circuit found no error and affirmed. United States v. Williams, 481 F. App'x 851 (4th Cir. 2012) (per curiam).

On March 25, 2013, Williams filed the present motion to vacate his sentence under 28 U.S.C. § 2255, asserting six grounds for relief. Dkt. No. 126. The District Court dismissed all but two claims for ineffective assistance of counsel that: (1) counsel failed to convey a plea offer and, (2) counsel failed to advise him that a jury could convict him on a theory of aiding and abetting the underlying criminal conduct. Dkt. No. 150. I have conducted an evidentiary hearing on the issues, heard the argument of counsel and considered the applicable law, and the matter is now ripe for disposition.

## II. Facts

Williams's convictions arise from a drug deal gone bad. The Government's evidence at trial showed that on August 28, 2009, Omar Marques Turner met Williams at a house in Martinsville, Virginia to purchase marijuana. During this transaction, Turner grabbed the marijuana from Williams and ran out of the house. Williams ran onto the front porch and fired his handgun at Turner as he fled the house. Turner reached his vehicle unharmed and returned to his residence, where he met his friend Michael Hudson.

A short time later, Williams and another associate, Joseph Hairston, were driving in Turner's neighborhood when they saw Turner and Hudson walking in front of Turner's house. Turner testified at trial that he observed Williams step out of his vehicle and fire a high-powered rifle in the direction of Hudson and Turner. Williams shot Hudson multiple times, causing serious injury. Turner escaped without injury.

At trial, Williams acknowledged that the he arranged the marijuana deal between Hairston and Turner, but that Turner pulled the gun out during the altercation and that the gun discharged during a scuffle. Williams denied that he knew anyone brought a gun to the drug transaction and further denied being present when Hudson was shot.

In light of Williams's testimony that he brokered the drug deal between Hairston and Turner, the Government sought and the Court instructed the jury that it could find Williams guilty if he aided and abetted in the commission of the underlying offenses. Dkt. No. 62. The jury verdict form finding Williams guilty does not indicate whether the jury determined that Williams was a principal in each count or if he aided and abetted the conduct. Dkt. No. 64.

Williams had several attorneys during the life of his criminal case, but he focuses his claims of ineffective assistance on the representation provided by James R. McGarry, Esq., who

3

represented Williams in the months leading up to and during trial. McGarry had previously represented Williams in related state charges.

At the evidentiary hearing, Williams testified that McGarry never discussed or conveyed any plea agreements, and that McGarry stated that Williams faced about the same sentence—roughly 15 years—regardless of whether he was found guilty at trial or accepted a plea agreement. Williams testified that he did not know a jury could find him guilty on an aiding and abetting theory and that he first learned that the Government sought to convict him on this theory when the court read the jury instructions to the jury. Williams testified that he would have pleaded guilty and taken 15 years had he known of his exposure under an aiding and abetting theory. At another point during testimony, Williams stated that he would have pleaded guilty to all three counts even without the benefit of plea agreement. In Williams's words, he was "in the middle of a drug deal gone bad" and that he would have never proceeded to trial and wasted anyone's time. On cross examination, however, Williams firmly denied his involvement with the gun charges, and testified that he was not aware of a firearm at the drug deal until it was discharged.

McGarry testified at the evidentiary hearing that he advised Williams that, without a plea agreement, he faced roughly the same penalty regardless of whether he pleaded guilty or was found guilty at trial. Furthermore, McGarry stated that he had informally discussed a plea agreement with the Assistant United States Attorney, but that he was never given a formal plea offer from the Government. McGarry's file did contain a written plea agreement which the government had extended to Williams through his previous counsel.[1] McGarry's notes reflect his discussions with the Government about various plea agreement possibilities, including the

---

[1] Neither Williams nor the Government entered this prior written plea agreement into evidence, and there is no evidence as to what the terms of this agreement were.

counts to which Williams could plead guilty and the enhancements to the penalties which the Government may seek. At no time did McGarry discuss with the Government any possible plea option which would yield less than 15 years of incarceration. Dkt. No. 160-1. McGarry testified that he discussed these possibilities with Williams and that McGarry thought that he could get the Government to agree to a sentence in the range of 15 years, but that no such offer was ever formally made. McGarry stated that Williams had no interest in pleading guilty with such a lengthy period of incarceration because he had young children and he faced the revocation of previously suspended sentences in other state court matters. Indeed, McGarry's case file notes state that "[c]lient not interested in pleading guilty [at] all." Dkt. No. 160-1.

McGarry testified that he never spoke with Williams about an aiding and abetting theory prior to trial, as there was no need to based on his evaluation of the evidence before trial. Specifically, McGarry stated that Williams indicated that he had no knowledge of a gun at the drug deal until the gun went off, suggesting no cause for concern about aiding and abetting. Furthermore, McGarry testified that nothing revealed in discussions with the Government suggested liability through aiding and abetting, and that the Government raised the fact that it intended to seek an aiding and abetting instruction only after Williams testified at trial that he had arranged the drug transaction between Turner and Hairston.

### III.  Analysis

To establish a claim for ineffective assistance, Williams must show both deficient performance by his counsel and prejudice caused by counsel's ineffective representation. See Strickland v. Washington, 466 U.S. 668, 669 (1984). Courts are highly deferential in the evaluation of counsel's performance, and apply a strong presumption that counsel's representation of a defendant was within the "wide range" of reasonable professional assistance.

Id.; see also Fields v. Att'y General of Maryland, 956 F. 2d 1290, 1297–99 (4th Cir. 1992); Hutchins v. Garrison, 724 F.2d 1425, 1430–31 (4th Cir. 1983); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977). Williams may overcome this presumption by showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Courts evaluate counsel's representation by an objective standard of reasonableness of whether counsel's performance amounted to "incompetence under 'prevailing professional norms.'" Premo v. Moore, 131 S.Ct. 733, 740 (2011)(quoting Strickland, 466 U.S. at 690). The prejudice prong requires that Williams show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The likelihood of a different outcome must be "substantial," and not merely "conceivable." Harrington v. Richeter, 131 S.Ct. 770, 787 (2011).

The Sixth Amendment right to counsel extends to plea bargaining, and thus, criminal defendants are entitled to effective counsel during that process as well. Missouri v. Frye, 132 S.Ct. 1399, 1405 (2012); Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012). In the plea context, the prejudice inquiry focuses on whether the allegedly ineffective performance affected the outcome of the plea process. Merzbacher v. Shearin, 2013 WL 285706, at *6 (4th Cir. 2013). "To show prejudice from ineffective assistance of counsel in a case involving a plea offer, petitioners must demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.'" Id. at *8 (citing Frye, 132 S.Ct. at 1409; Lafler, 132 S.Ct. at 1385).

### A. Failure to Convey Plea Agreement

Williams first alleges that McGarry's representation was constitutionally deficient because he failed to convey a favorable plea agreement from the Government, and that McGarry incorrectly advised Williams that he would receive the same sentence regardless of whether he pleaded guilty or proceeded to trial. I find that this portion of Williams's claim is without merit.

Defense counsel has a duty to communicate to a client a formal, favorable plea agreement from the Government. Frye, 132 S.Ct. at 1408. Beyond Williams's unsubstantiated allegation, the facts of the instant case fail to establish a violation of this duty. McGarry's affidavits and testimony, corroborated through his case file notes, establish that the Government never extended to McGarry a formal plea offer, and the Government likewise affirms that no formal plea offer was communicated to McGarry. Dkt. No. 139, at 5. McGarry's representation could not be ineffective for failing to convey a plea agreement, if McGarry was never presented with a formal plea agreement to convey to his client. Williams has not proffered any corroborating evidence suggesting otherwise. "Unsubstantiated assertions fall far short of the standard needed to show ineffective assistance…." United States v. Baldwin, 60 F.3d 825 (4th Cir. 1995) (per curiam) (citing Hill v. Lockhart, 474 U.S. 52, 58–59 (1985)).

Similarly, Williams's testimony that McGarry advised him to go to trial because he would be facing approximately 15 years regardless of whether he pleaded guilty or went to trial is also unsubstantiated by the evidence. McGarry's notes, taken contemporaneously with his negotiations with the Government, reflect that if Williams were convicted on all three counts in the indictment, he faced up to 35 years of imprisonment. McGarry testified that he discussed this significant prison exposure with Williams and that he also discussed with Williams that he faced a similar sentence if he pled guilty to all of the charges in the indictment *without* an agreement.

7

This advice would have been accurate in light of the mandatory minimums on the firearm charges and the nature of the drug distribution charge.

McGarry further testified that he believed he could negotiate a plea agreement for approximately 15 years of incarceration, and that when Williams was presented with the possible plea scenarios which included a prison sentence of 15 years, Williams emphatically stated that he did not want to plead guilty. The Government had not even offered, nor did it consider, a plea agreement in this range at the time. Even assuming that a plea agreement of this nature had been offered, there is no indication, beyond Williams's bald assertions at the evidentiary hearing, that Williams and the Court would have accepted such an agreement. Therefore, I cannot find that Williams has met the significant burden of establishing either error by his counsel or any prejudice resulting therefrom.

For these reasons, I find that Williams has not established deficient performance on the part of McGarry, or prejudice from any alleged deficiency. I therefore recommend denying Williams's petition on this ground.

### B. Aiding and Abetting Theory

Williams's next argument of ineffective assistance of counsel is that McGarry failed to advise him that he may be convicted of the charges he faced on the theory of aiding and abetting. Williams contends that had he been advised of his exposure as an accomplice, he would have pleaded guilty and accepted a sentence in the range of 15 years. Upon questioning by the Court, Williams further testified that he would have pleaded guilty to all three counts even without the benefit of a plea agreement if he'd known of the aiding and abetting theory. I find Williams's testimony wholly incredible.

The credibility of Williams's claim is fundamentally flawed in light of his sworn testimony and the legal realities of his case. Williams faced, with his criminal history, a maximum of 10 years on the marijuana charge. 21 U.S.C. § 841(b)(1)(D). To accept a plea agreement of approximately 15 years, he would have had to plead guilty to at least one § 924(c) gun charge, each of which carried a mandatory minimum of 10 years. 18 U.S.C. § 924(c)(1)(A)(iii). Williams's present assertion that he would have taken a 15 year plea agreement belies his version of the facts regarding the gun charges, testified to under oath on more than one occasion.

Under the Government's version of the facts presented at trial, Williams served as the principal offender in all three charges. No suggestion of a theory of aiding and abetting was raised by the Government's evidence which showed that Williams was the principal possessor of the marijuana at the drug deal, and the triggerman for both shootings. Only after Williams's own testimony about arranging a drug deal with Turner and Hairston did the Government seek an aiding and abetting instruction. Moreover, in the Government's closing argument, the Government argued that Williams aided and abetted the drug charge, but not the gun charges. Dkt. No. 118, p. 16 ("Williams… possessed that marijuana with the intent to distribute, or aided and abetted in doing it, and used a firearm in relation to a drug trafficking crime twice….").

At trial, Williams testified that it was Turner who brought the gun to the drug transaction leading to the first shooting, and Williams denied his presence at the second shooting. Williams's testimony at the evidentiary hearing was consistent, denying any advance knowledge of a gun at the first shooting. If Williams's version of the facts were true, he could not made have made a knowing and voluntary guilty plea to the gun charges in Count Two or Three, either as a principal *or* as an accomplice. "An active participant in a drug transaction has the intent needed

9

to aid and abet a § 924(c) violation when he *knows* that one of his confederates will carry a gun." Rosemond v. United States, 134 S. Ct. 1240, 1249 (2014) (emphasis added). Therefore, Williams's professed lack of advanced knowledge about the presence of a firearm at either shooting, and therefore lack of requisite criminal intent, would have precluded convictions on Counts Two or Three. Accordingly, Williams's after-the-fact assertion that he would have pleaded guilty if McGarry had advised of the accomplice theory is simply not credible.

McGarry testified that he did not advise Williams on the aiding and abetting theory because there was no reason to; in McGarry's review of the discovery, as well as discussions with Williams and the Government, no such theory was applicable. The Government's evidence corroborates McGarry's testimony that the theory was not put at issue until trial. Nothing in the record suggests that that accomplice liability played a role in negotiations with the Government, or that McGarry should have advised Williams on such a theory when discussing plea options. In the face of this record, and in light of Williams's unsubstantiated claim, I find that Williams has failed to show that McGarry's performance was constitutionally deficient, or that Williams was prejudiced by any alleged deficient representation.

## CONCLUSION

For the foregoing reasons, I find that Williams has failed to carry his burden of proof that his counsel was ineffective in any manner which caused him prejudice, and thus, I recommend that the court dismiss the petition.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

       Enter: May 29, 2014

       *Robert S. Ballou*

       Robert S. Ballou
       United States Magistrate Judge