## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## DANVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 4:09-CR-39 |
| **v.** | ) | |
| | ) | **OPPOSITION TO MOTION** |
| **CHADRIQUEZ DEVON WILLIAMS** | ) | **TO WITHDRAW** |

After appointment of counsel, months of extensions, several missed deadlines, and substantial briefing on his motion for compassionate release initially filed in 2020, Chadriquez Williams seeks leave to withdraw his motion. That is not in the interests of justice, or its orderly and efficient administration. Indeed, one theory Williams espouses for granting withdraw—that he can simply refile later because "there is no bar on a successive compassionate release motion raising new grounds"—shows why denial of withdrawal is appropriate. The Court has fully briefed arguments—including the issue of whether the Farm Bill can be an extraordinary and compelling circumstance—on which it can decide whether Williams warrants a reduced sentence. If it decides he does, he should get that ruling sooner rather than later, and if it decides he does not, Williams asserts he can simply raise additional grounds later.[1] The motion should thus be denied, for that and the following reasons:

---

[1] As discussed below, however, Williams has repeatedly said he would make future submissions yet then failed to do so, and the additional grounds his motion to withdraw cites do not appear to be new.

1.      District courts "have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).  This authority extends to granting or denying motions to withdraw prior submissions.  Even when the Executive Branch seeks to outright dismiss charges—a situation implicating the constitutional separation of powers—there is not an absolute and unreviewable right to withdraw in all situations.  *See* Fed. R. Crim. P. 48(a) (requiring "leave of court"); *Rice v. Rivera*, 617 F.3d 802 (4th Cir. 2010) (articulating narrow circumstances in which denial of Government's own motion to dismiss may be warranted).

2.      The motion to withdraw refers to Williams' transfer to a different institution, suggesting he needs to exhaust his administrative remedies again before raising two additional arguments about alleged racial disparities at sentencing.  Dkt. 251 at 1–2. There are several reasons this does not justify granting the motion to withdraw.  First, the Government does not raise exhaustion.  Second, Williams nowhere says these sentencing disparity arguments (which are routinely asserted by defendants and have been for years, *see, e.g.*, *Kimbrough v. United States*, 552 U.S. 85 (2007)) are new.  Indeed, they are not.  Williams's counsel indicated in December 2021—prior to the Government's opposition brief, when the issue could have been briefed in an orderly and non-wasteful fashion—that counsel intended to supplement his motion with a racial disparity argument.  Dkt. 248-2.  No such supplement, or

leave to supplement, was filed.

3.      On this last point, this compassionate release litigation has been marked by delays since the Court appointed counsel for Williams.   As summarized elsewhere, dkt. 258 at 16–17, Williams missed his filing deadline in June 2021, then again in July 2021.   After four months of silence, Williams received another extension, only to miss the response deadline for the third time without explanation. Upon finally filing his motion in December 2021 after months to prepare it, Williams nonetheless informed the Government he intended to supplement with a racial disparity argument and with § 3553(a) evidence.  Dkt. 248-2.

4.      When no such supplement or evidence was filed, the Government's January 25, 2022 opposition brief objected to further supplementation "[d]ue to the extraordinary time afforded by the Court, the absence of any post-supplement submissions by Williams, the need to proceed in an orderly and efficient fashion, and the resources expended in responding based [on] the current record."  Those interests have only strengthened with the passage of time.  That is especially so after Williams filed a notice on March 11, 2022, stating he "will be filing a response to the government's opposition," dkt. 249, but then failed to do so.

5.      Instead, Williams filed the instant motion to withdraw his compassionate release motion entirely (although with the intent to simply refile it later).  Put bluntly, the record here supports the conclusion that the late-breaking

motion to withdraw is a simply a procedural gambit born of Williams' failure to raise

issues and arguments in a timely and procedurally sensible fashion.[2]

6.      Importantly, the only apparent effect *on Williams himself* of granting

the withdrawal motion would be to delay his prospect (however faint) of obtaining

release.   Granting the motion would also waste the collective resources already

expended through the briefing process.

In sum, the motion to withdraw comes after: (1) Williams submitted a

compassionate release argument after months of extensions; (2) he clearly knew of

additional arguments and expressly stated an intention to raise them; (3) he failed to

do so, and; (4) the Government expended resources to answer those arguments and

opposed any eleventh-hour supplements, which Williams had ample opportunity to

raise earlier.   Ironically, then, his last argument for withdraw is essentially "the-

Government-made-me-do-it," because it asserted litigation should proceed in a

---

[2]      In an apparent effort to suggest there is some new development that deserves
consideration, Williams refers to his daughter's "January 2022" traumatic brain
injury (TBI) and alludes to its possible effect on the § 3553(a) analysis.   First,
Williams' compassionate release motion neglected the § 3553(a) factors.   Second,
he conspicuously does not say when in January 2022 that injury occurred or when
he learned of it.   Those omissions are relevant, since the Government's opposition
brief was filed on January 25, 2022, and there would have been no objection to
supplementation before that, as Williams suggested in December 2021 he would do.
And third, even assuming Williams' daughter now has a TBI, that would not
overcome the mountain of other § 3553(a) considerations that warrant denial of his
compassionate release motion.   *See* dkt. 248 at 31–33.   In short, the TBI assertion
should not change the Court's calculus because it is futile.

timely, orderly, and efficient manner.  To state that argument is to refute it.

The motion to withdraw should be denied.  The underlying motion for compassionate release should also be denied for the reasons stated in the Government's opposition brief.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
UNITED STATES ATTORNEY


/s/   S. Cagle Juhan
Assistant United States Attorney
255 West Main Street, Room 130
Charlottesville, Virginia 22902
Cagle.Juhan@usdoj.gov
(434) 293-4283
DC Bar No. 1022935

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice, and constitute service, of such filing to the following registered CM/ECF user(s): Christine Lee, Assistant Federal Public Defender, Counsel for Defendant.

/s/   S. Cagle Juhan
Assistant United States Attorney
DC Bar No. 1022935