CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

NOV 28 2022

LAURA A. AUSTIN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 4:09-cr-00039 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| CHADRIQUEZ DEVON WILLIAMS, ) | Chief United States District Judge |
| Defendant-Petitioner ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Chadriquez Devon Williams' motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF Nos. 210, 244. Also pending are Williams' motion to withdraw ECF No. 244, filed at ECF No. 251, and a subsequent motion he filed for compassionate release, ECF No. 254. The government has responded to the motions and Williams has replied. ECF Nos. 248, 253, 272, 275. For the reasons stated herein, the court will **DENY** Williams' original motion, ECF No. 210; **GRANT** ECF No. 251 and deem ECF No. 244 withdrawn; and **DENY** Williams' remaining motion for compassionate release, ECF No. 254.

## BACKGROUND

This case arose out of incidents that occurred on August 28, 2009. According to the Presentence Investigation Report (PSR) filed in this case, Omar Turner met with Williams wanting to purchase two ounces of marijuana. An argument ensued over the quantity and price of marijuana to be sold and Turner pushed Williams to the ground and grabbed a bookbag that contained the marijuana. Turner ran from the house and fell on the porch. As he tried to get up, Williams began shooting at Turner from inside the house. Turner ran to his vehicle and drove away without being harmed. PSR, ECF No. 211 ¶ 4.

Turner went to his house, where he was joined by Michael Hudson, and the two began to smoke marijuana. Later in the day, Turner and Hudson were walking to Hudson's apartment when Turner noticed Williams stepping out of a car. Williams raised a rifle and began shooting. Turner managed to escape without injury, but Williams shot Hudson in the finger, thigh, and right testicle. Id. ¶¶ 5–10. Hudson incurred $52,706.34 in medical bills and suffered from psychological issues after the shooting. Id. ¶ 10.

On November 11, 2009, a Grand Jury returned an indictment charging Williams with the following offenses: (1) Knowingly and intentionally possessing with the intent to distribute a measurable quantity of a mixture or substance containing marijuana, a Schedule I narcotic, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count One); (2) Knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime which may be prosecuted in a Court of the United States, as set forth in Count One, and did discharge the firearm, in violation of 18 U.S.C. § 924(c) (Count Two); and (3) At a time and place different from that set out in Count Two of the indictment, knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime which may be prosecuted in a Court of the United States, as set forth in Count One, and did discharge the firearm, in violation of 18 U.S.C. § 924(c) (Count Three). Indictment, ECF No. 3.

On July 20, 2010, the government gave notice of enhanced punishment pursuant to 21 U.S.C. § 851.[1] The notice was based on Williams' three previous felony convictions for sale of

---

[1] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of

2

marijuana in the Circuit Court of Martinsville City, Virginia. Notice, ECF No. 50. On August 4, 2010, a jury returned a verdict finding Williams guilty on all counts. Verdict, ECF No. 64.

On Count One, Williams faced a statutory maximum prison term of 10 years. 21 U.S.C. § 841(b)(1)(D). On Count Two, he faced a term of 10 years to life and on Count Three, he faced a term of 25 years to life. 18 U.S.C. § 924(c)(1)(A)(iii); 18 U.S.C. § 924(c)(1)(C)(i). Williams' sentencing range under the United States Sentencing Guidelines ("USSG" or "guidelines") was 438–444 months. This range was based on Williams' status as a career offender under USSG §§ 4B1.1(a) and 4B1.1(c)(2)(A). The prior felony convictions that qualified him as a career offender were his state offense of distribution of marijuana (5 counts) in March 2005 for which he served nine months in jail and his state offense of selling marijuana (2 counts) in October 2005, for which he served 10 days in jail. PSR, ECF No. 211 ¶¶ 22, 25, 26. The career offender designation increased his criminal history category from III to VI and with his offense level of 6 based on 19.65 grams of marijuana, increased by two levels for obstruction of justice to 8, he had a sentencing range of 18–24 months. That range was added to the ranges established by the two § 924(c) convictions, which were 120 months and 300 months, respectively. USSG § 4B1.1(c).

Without the career offender designation, Williams' offense level was 8 and he had a criminal history category of III, giving him a guidelines range of 6–12 months. USSG Ch. 5 Pt. A. Added to his guideline range for the firearm offenses (420 months), his guideline range was 426–442 months. PSR, ECF No. 211 ¶¶ 14-21, 29.

---

such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

3

On October 22, 2010, Williams was sentenced to 18 months on Count One, 120 months on Count Two, and 300 months on Count Three, all to run consecutively, for a total of 438 months. J., ECF No. 75. Williams appealed his conviction, United States v. Williams, No. 10-5131 (4th Cir. filed Nov. 2, 2010), and on June 10, 2011, the government filed a motion to remand the case, arguing that although the jury found that Williams had on two separate occasions possessed a firearm in relation to a single drug-trafficking predicate, the policy of the Justice Department was that multiple violations of 18 U.S.C. § 924(c) may not be based upon a single predicate drug-trafficking offense. Id. at Doc. 42. On July 1, 2011, the Fourth Circuit Court of Appeals vacated Williams' sentence and remanded his case for resentencing. Id. at Doc. 47; ECF No. 95 in this case.

On remand, the government moved to dismiss Count Three of the indictment and the district court granted the motion on October 6, 2011. ECF Nos. 103, 104, 105. On October 18, 2011, the court resentenced Williams to 18 months on Count One and 342 months on Count Two, for a total of 360 months. ECF No. 108. The court found that based on Williams' status as a career offender, his guidelines sentence on Count Two was 360 months to life. Sentencing Tr., ECF No. 114 at 3. At the resentencing, the court stated the following:

> I mean, it's clear the defendant has just kind of run a drug business a good part of his adult life. But it seems to me it's been a fairly small business, though. What the court sees [as] the overarching, most significant and most serious aspect of all this, not that running a drug business isn't serious enough, is the fact that the court views this as an effort to take the life of another human being. I mean that was involved in this case, that this was in response to what happened at the defendant's home.
>
> The defendant . . . set out to track down and take the life of the person involved, and used an AK-47, or something of similar

4

> caliber, to inflict grievous bodily injury on another human being. And I consider that to be the most serious aspect.
>
> And so the sentence the court is going to impose reflects the fact that the court views that to be the most important and significant aspect of this series of events. Yes, he used a firearm at least twice in the course of this, once a smaller handgun there at his home, but he also used . . . a high caliber weapon in an effort to take the life of another person, and, thereby, inflicted this grievous injury. . . .
>
> So the court emphasizes the protection of the public in the sentence the court imposes.

Sentencing Tr., ECF No. 114 at 10–11.

Williams appealed the sentence, and the Fourth Circuit Court of Appeals affirmed in an unpublished per curiam opinion. Doc: 74 in United States v. Williams, No. 10-5131 (4th Cir. ord. entered May 31, 2012); ECF Nos. 119, 120 in this case. Williams sought post-conviction relief via several motions filed pursuant to 28 U.S.C. § 2255, all of which were denied. Williams has been incarcerated since his arrest and has a projected release date of September 28, 2035.[2]

## ANALYSIS

### I. Pending Motions

The court notes that after Williams filed a pro se request for counsel to help determine whether he had a claim under the First Step Act, ECF No. 210, the court appointed the Federal Public Defender (FPD) to determine whether Williams had a viable claim for relief. ECF No. 213. The FPD responded that she was not aware of any ground for relief that Williams might

---

[2] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed October 27, 2022) (search "Chadriquez Williams").

urge under the First Step Act but sought additional time to file a motion for compassionate release on his behalf.[3] ECF No. 215. The court granted that motion as well as several motions for extension of time to file. Based on the FPD's representation that Williams does not have a claim under the First Step Act and the court's inability to discern any basis for a First Step Act claim, his motion filed at ECF No. 210 is **DENIED**.

Counsel for Williams next filed a motion for compassionate release on December 14, 2021, arguing that if he were sentenced today, he no longer would be considered a career offender and that the difference in his status would result in a significantly shorter sentence, allowing him to show an extraordinary and compelling reason warranting compassionate release. ECF No. 244. The government responded to that motion, arguing that Williams is not entitled to compassionate release. ECF No. 248. On June 22, 2022, Williams filed a motion to withdraw ECF No. 244, because he wanted to file a new motion for compassionate release to include an argument that the fact that his teenage daughter suffered a traumatic brain injury increased the urgency of his motion. ECF No. 251. In addition, Williams indicated that he wanted to have the court consider evidence that (1) the career offender designation in the guidelines has been disproportionately used against African-American defendants to increase their sentences; (2) that the career offender guideline was improperly used in Williams' case because his previous convictions solely involved distribution of marijuana; and (3) marijuana

---

[3] "The First Step Act" is the name of the legislative act, Public Law 115-39, that was passed by Congress on December 18, 2018. The act made changes to the compassionate release statute, 18 U.S.C. § 3582 (c)(1), and changes to the quantities of cocaine base that trigger sentences under 18 U.S.C. § 841(b)(1), as well as other changes to sentencing statutes and BOP administrative programs. Despite all the changes being part of the First Step Act, this court refers to Williams' initial motion, ECF No. 210, as his "First Step Act" claim and refers to his motion based on 18 U.S.C. § 3582(c)(1) as his "compassionate release" claim.

law enforcement has been historically targeted toward African-American defendants to a level that implicates equal protection considerations.[4] ECF No. 253.

The government opposed the motion to withdraw Williams' first compassionate release motion, because the issues had been fully briefed and Williams had sought repeated extensions of time and now indicated that he wished to raise additional issues. ECF No. 253. In response, Williams filed a "comprehensive memorandum" in which he appears to raise all the grounds for compassionate release that he would like the court to consider. ECF No. 254. The memorandum has been construed as a motion for compassionate release and the government has responded to it, incorporating its response to the first motion. ECF No. 272. Based on the foregoing, the court **GRANTS** the motion to withdraw, ECF No. 251. The supplemental motion for compassionate release filed on December 14, 2021 is deemed **WITHDRAWN**. The court will address the grounds for compassionate release raised in the comprehensive memorandum filed at ECF No. 254 and will consider the government's responses in ECF Nos. 248 and 272.

## II. Compassionate Release Statute

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30

---

[4] Williams also indicated that because he had been moved to another institution, he needed to start the exhaustion process anew. As discussed below, the government concedes that Williams has exhausted his administrative remedies.

7

days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Williams' requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131.

Williams submitted a compassionate release request to the warden at his facility on September 13, 2020 and filed his motion for compassionate release more than thirty days later. Mot. for Sent. Reduction, ECF No. 244. The government does not dispute that Williams has satisfied this threshold requirement. Opp. to Mot. to Withdraw, ECF No. 253 at 2. Therefore, the court finds that Williams has fully satisfied the statute's administrative exhaustion requirement.

8

Typically, the court next considers whether there are any "extraordinary and compelling reasons" that would warrant "reduc[ing] the term of imprisonment" imposed in Williams' case. 18 U.S.C. § 3582(c)(1)(A). The court does so by conducting an "individualized assessment" of the defendant's circumstances when considering whether a change in circumstances constitutes an "extraordinary and compelling reason" warranting a sentence reduction. United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020).

### A. Daughter's Injury

Williams advised the court that in January 2022 his daughter suffered a traumatic brain injury from which she has not "remotely fully recovered." Mot., ECF No. 254 at 35. While the court is sympathetic to Williams' desire to be with his daughter, the USSG § 1B1.13 policy statement provides only two family circumstances which present extraordinary and compelling reasons for compassionate release: (1) where the caregiver of the defendant's minor child dies or becomes incapacitated, or (2) where the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver. While not a binding determination, the Sentencing Commission considered family circumstance as a basis for compassionate release and did not extend those circumstances to the caretaking of one's child, unless the child is a minor and the child's caregiver dies or becomes incapacitated. Williams has presented no evidence that either circumstance exists in his case. Accordingly, the court must deny his motion for compassionate release based on the fact that his daughter has suffered a traumatic brain injury.

## B. Sentencing Disparity

In McCoy, 981 F.3d at 284, the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." Id. (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so holding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement. See discussion, McCoy, 981 F.3d at 280–84.

The McCoy court examined the changes to 18 U.S.C. § 924(c) brought about by the First Step Act. Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(i). "Under § 403 of the First Step Act, that is, the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" McCoy, 981 F.3d at 275 (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). The practical result of the change is that where defendants once faced a mandatory minimum sentence of 25 or 30 years when convicted of two firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense, for a total of 10 years. United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. Mar. 16, 2020).

The McCoy court acknowledged that the change to § 924(c) does not apply retroactively to sentences imposed before December 21, 2018. Id. at 275. But the court distilled two features of stacked § 924(c) sentences that led to finding that the defendants met the "extraordinary and compelling reasons" standard: (1) "the sheer and unusual length of the sentences," and (2) the "'gross disparity' between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." Id. at 285. The court concluded that the district courts' consideration of "the First Step Act's declaration of the appropriate level of punishment under § 924(c)" to be proper "in assessing the defendants' cases, on an individualized basis, for compassionate release." Id. at 275.

Following McCoy, courts, including this one, have found defendants entitled to compassionate release where changes in statutes or case law meant that a defendant, if sentenced today, would face a substantially shorter sentence than he did originally. Where the difference in the sentences could be considered a "gross disparity," the defendant can show an extraordinary and compelling reason for a sentence reduction. See, e.g. United States v. Britton, No. 5:12-cr-14, (W.D. Va. Sept. 6, 2022) (granting motion for compassionate release based on changes to 21 U.S.C. § 841(b)(1)(A) and finding that § 3553(a) factors favored reduction in sentence); United States v. Edwards, No. 5:17-cr-00011, 2022 WL 1557045 (W.D. Va. May 17, 2022) (applying McCoy to reduce sentence when sentence enhancement would no longer apply after the First Step Act); United States v. Gamboa, No. 2:08-cr-00151-2, 2022 WL 275528 (S.D.W.V. Jan. 28, 2022) (quoting United States v. Johnson, No. 2:07-cr-0924, 2021 WL 2379474 (D.S.C. June 10, 2021)) ("[T]he logic 'espoused in McCoy ... applies with equal force to the similar disparities brought about by the First-Step-Act changes to [21 U.S.C.]

11

§§ 841 and 851.'"); United States v. Richards, No. 3:11-CR-31, 2021 WL 3861599 (W.D. Va. Aug. 30, 2021) (quoting United States v. Stuart, No. 5:92-CR-114-BR-3, 2020 WL 7232074, at *3 (E.D.N.C. Dec. 8, 2020) ("Following McCoy, other district courts in this Circuit have found that they 'may consider changes in sentencing law—even nonretroactive ones—in assessing whether a defendant has shown extraordinary and compelling reasons warrant a reduction in his sentence.'"); Babb v. United States, No. ELH-04-0190, 2021 WL 2315459, at *12 (D. Md. June 4, 2021) (concluding that court has authority under McCoy to consider legislative change to § 851 in conducting review of motion for compassionate release); United States v. Lii, 528 F. Supp. 3d 1153 (D. Haw. Mar. 23, 2021) (applying reasoning in McCoy to reduce a life sentence based on two prior state court convictions for relatively minor drug offenses); United States v. Williams, No. 5:12cr14, 2020 WL 5834673 (W.D. Va. Sept. 30, 2020) (same).

In this case, Williams claims that if he were sentenced today, he would not be considered a career offender, which would result in a substantially shorter sentence. He makes the following arguments in support of his claim: (1) Under United States v. Campbell, 22 F.4th 438 (4th Cir. 2022), his prior convictions for marijuana distribution in the Commonwealth of Virginia are not controlled substance offenses that can serve as predicates for the career offender guideline, because the state drug statutes are overbroad; (2) Under United States v. Hope, 28 F.4th 487 (4th Cir. 2022), Williams's prior marijuana convictions would not qualify as a predicate offenses under the career offender guideline because he was convicted using a Virginia statute that is categorically broader that the current Virginia marijuana definition, which has been modified to exclude hemp; (3) The career offender guideline has been disproportionately deployed against African-American defendants and should be disregarded;

12

and (4) Williams' original marijuana convictions were the result of racially disparate policing and should have been disregarded.[5]

However, the compassionate release analysis requires not only a finding that the defendant has presented an extraordinary and compelling reason for a sentence reduction, such as a "gross disparity" in the sentence being served and the sentence that would be imposed today, but also a finding that the § 3553(a) factors warrant a sentence reduction. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021). Even when a defendant demonstrates an extraordinary and compelling reason, a court may decline to reduce a sentence based exclusively on the § 3553(a) factors. See id. at 187 ("We conclude that the district court did not abuse its discretion in declining to reduce High's term of imprisonment by approximately two-thirds, based on its consideration of the § 3553(a) factors.")

In Williams' case, the court finds that the § 3553(a) factors preclude a reduction in his sentence. Therefore, the court finds that even if Williams showed an "extraordinary and compelling" reason for a sentence reduction based on a "gross disparity" between the sentence he received in 2010 and the sentence he would receive today, the court would not reduce his sentence based on the § 3553(a) factors.

### C. 18 U.S.C. § 3553(a) Factors

The § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[5] Williams also argued that since passage of the 2018 Farm Act, his 2009 federal offense of possession of marijuana with intent to distribute no longer is considered a controlled substance offense and that without that triggering federal offense, he could not be designated a career offender today. Mot., ECF No. 254 at 10–12. However, he has since withdrawn that argument. Reply, ECF No. 275 at 3 n.2.

13

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, the court is struck by the utter disregard for human life that Williams displayed. Williams acted first in a reckless and dangerous manner when he shot at Turner after Turner stole his marijuana during the drug transaction. But while Williams' reaction to the theft might be explained by anger experienced

in the heat of the moment, he later, after having had time to cool down, acted in a deliberate and dangerous manner when he obtained a rifle and set out to hunt Turner down. When Williams spotted Turner and Hudson, he started firing, and whether due to poor marksmanship, cold-blooded disregard for human life, or both, shot Hudson, causing him a grave injury. The nature and circumstances of the offense weigh heavily against reduction of Williams' sentence.

Turning to the history and characteristics of the defendant, Williams reported to the probation officer who prepared the PSR that he was raised by parents who were very involved in his life and that he had a very good childhood. PSR, ECF No. 211 ¶ 35. Williams graduated from high school with average to above-average grades. Id. ¶ 40. He reported no history of mental or emotional problems and no history of drug or alcohol abuse. Id. ¶ 39. Williams filed with the court thirteen letters from family and friends offering support and describing him as a caring and respectable person. ECF Nos. 255–267. Williams also submitted a petition signed by friends and family asking for his release. ECF No. 268. The court read and considered the letters and the petition, and they offer encouragement that Williams is not defined by the violent nature of his offense. Nevertheless, Williams' history and support from family and friends do not outweigh the nature and characteristics of his offense.

Williams described his institutional history as "remarkably good" with no instances of violence or possession of the implements of violence. Mot., ECF No. 254 at 35. While it is true that Williams has not been disciplined for violent offenses, he has been disciplined for allowing another inmate to use his account to make a telephone call, for using another inmate's account to make a telephone call, for twice testing positive for marijuana use, for giving or

accepting money without authority, and for abusing the telephone by disrupting monitoring of usage. Two of the telephone offenses occurred in 2021 and one of the marijuana offenses occurred in 2022. ECF No. 272-3. Williams' disciplinary record is troubling in that three of his offenses have occurred in the last two years, which shows a disrespect for the rules of the institution, even after having been incarcerated for many years. Williams has presented no evidence of classes or programming in which he has participated while incarcerated or any employment history while incarcerated. Williams' institutional history is average at best and weighs neither in favor nor against early termination.[6]

Turning to the next factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the court finds that Williams' current sentence of 360 months accomplishes these goals. At the time Williams was sentenced, the court made clear that the 360-month sentence was driven by the fact that Williams used a high caliber weapon in an effort to take the life of another person with the result that he inflicted grievous bodily injury on Hudson. The court also emphasized that it believed the 360-month sentence was necessary to protect the public. Nothing in Williams' motion changes the weight of these factors in relation to his sentence.

Looking next at the kinds of sentences available and the sentencing range established for Williams' offenses, his statutory sentencing range remains ten years to life on Count Two.

---

[6] The government argues that Williams disciplinary infractions of drugs, illicit money transfers, and inappropriate phone usage suggests that he has not left his drug-dealing activities behind while in prison. Resp., ECF No. 272 at 18. However, there is no evidence in the record that Williams has trafficked drugs while in prison and the court has not considered that possibility in its analysis of the § 3553(a) factors.

Assuming without deciding that the career offender guideline would not be applicable, Williams' guidelines range would be 126 to 132 months. His sentence of 360 months is undeniably long and exceeds his guidelines sentence, were it to be calculated without the career offender enhancement. However, as discussed above, Williams' sentence was driven not by his status as a career offender, but by the nature of his attack on Turner and Hudson, and Hudson's resulting injury. Although his sentence exceeds the guidelines sentence he argues is applicable in his case and is longer than his statutory minimum sentence, the court finds that it continues to be appropriate given the nature of his offense. The other factors set forth in § 3553(a) weigh neither in favor nor against a sentence reduction.

Williams also argued and presented evidence that the career offender guideline has been disproportionately deployed against African-American defendants and also that his original marijuana convictions were the result of racially disparate policing and should be disregarded. Mot., ECF No. 254 at 18-34. In his reply brief, he clarified that the arguments and data he presented were provided to support the notion that if the court determined it was authorized to reduce Williams' sentence, it should do so. Reply, ECF No. 275 at 2-3. The court read and considered the information presented by Williams and finds it compelling. Nevertheless, McCoy directs that courts are to conduct an "individualized assessment" of a defendant's circumstances when considering whether to grant a motion for compassionate release. McCoy, 981 F.3d at 286. As set forth above, the court determined that the balance of the § 3553(a) factors weigh against granting Williams a sentence reduction based on the facts of his offense, including his deliberate embrace of violence, and the lack of evidence that he has matured or

changed while in prison, notwithstanding any other elements that might have been at play in his underlying marijuana conviction or the application of the career offender guideline.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is not warranted in Williams' case. Given the circumstances, including the nature of the offense and Williams' history and characteristics, the court concludes that a sentence of 360 months continues to be appropriate in this case, even if Williams' guideline sentence would be shorter today. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Williams' conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public.

### III. Conclusion

For the above-stated reasons, the court **ORDERS** the following: (1) Williams' original motion, ECF No. 210, is **DENIED**; (2) Williams' motion to withdraw, ECF No. 251, is **GRANTED** and ECF No. 244 is deemed withdrawn; (3) Williams' remaining motion for compassionate release, ECF No. 254, is **DENIED**. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: November 28, 2022

Michael F. Urbanski
Chief United States District Judge