CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

APR 19 2024

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal No. 4:09-cr-00039** |
| **v.** | ) | |
| | ) | **By:    Michael F. Urbanski** |
| **CHADRIQUEZ DEVON WILLIAMS,** | ) | **Chief United States District Judge** |
| Defendant-Petitioner | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on defendant Chadriquez Devon Williams' motion

for a sentence reduction under 18 U.S.C. § 3582(c)(2), in which he seeks to use Amendment

821 to the United States Sentencing Guidelines ("USSG" or "guidelines") to challenge his

designation as a career offender. This court previously denied Williams' motion for relief at

ECF No. 311. However, Williams filed a motion for reconsideration, pointing out that the

court denied the motion before allowing Williams' the full response time to which he was

entitled. ECF No. 312. The court then vacated its order denying relief and gave Williams

additional time to respond. ECF No. 313. Having now considered all the briefing, for the

reasons stated below, the court **DENIES** Williams' motion for a sentence reduction under

Amendment 821 to the guidelines.

**I. BACKGROUND**

This case arose out of incidents that occurred on August 28, 2009. According to the

Presentence Investigation Report (PSR) filed in this case, Omar Turner met with Williams

wanting to purchase two ounces of marijuana. An argument ensued over the quantity and

price of marijuana to be sold and Turner pushed Williams to the ground and grabbed a

bookbag that contained the marijuana. Turner ran from the house and fell on the porch. As

he tried to get up, Williams began shooting at Turner from inside the house. Turner ran to his vehicle and drove away without being harmed. PSR, ECF No. 211 ¶ 4.

Turner went to his house, where he was joined by Michael Hudson, and the two began to smoke marijuana. Later in the day, Turner and Hudson were walking to Hudson's apartment when Turner noticed Williams stepping out of a car. Williams raised a rifle and began shooting. Turner managed to escape without injury, but Williams shot Hudson in the finger, thigh, and right testicle. Id. ¶¶ 5–10. Hudson incurred $52,706.34 in medical bills and suffered from psychological issues after the shooting. Id. ¶ 10.

On November 11, 2009, a Grand Jury returned an indictment charging Williams with the following offenses: (1) Knowingly and intentionally possessing with the intent to distribute a measurable quantity of a mixture or substance containing marijuana, a Schedule I narcotic, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count One); (2) Knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime which may be prosecuted in a Court of the United States, as set forth in Count One, and did discharge the firearm, in violation of 18 U.S.C. § 924(c) (Count Two); and (3) At a time and place different from that set out in Count Two of the indictment, knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime which may be prosecuted in a Court of the United States, as set forth in Count One, and did discharge the firearm, in violation of 18 U.S.C. § 924(c) (Count Three). Indictment, ECF No. 3.

On July 20, 2010, the government gave notice of enhanced punishment pursuant to 21 U.S.C. § 851.[1] The notice was based on Williams' three previous felony convictions for sale of marijuana in the Circuit Court of Martinsville City, Virginia. Notice, ECF No. 50. Williams was tried by a jury and on August 4, 2010, the jury returned a verdict finding Williams guilty on all counts. Verdict, ECF No. 64.

On Count One, Williams faced a statutory maximum prison term of 10 years. 21 U.S.C. § 841(b)(1)(D). On Count Two, he faced a term of 10 years to life and on Count Three, he faced a term of 25 years to life. 18 U.S.C. § 924(c)(1)(A)(iii); 18 U.S.C. § 924(c)(1)(C)(i). Williams' sentencing range under the United States Sentencing Guidelines ("USSG" or "guidelines") was 438–444 months. This range was based on Williams' status as a career offender under USSG §§4B1.1(a) and 4B1.1(c)(2)(A). The prior felony convictions that qualified him as a career offender were his state offense of distribution of marijuana (5 counts) in March 2005 for which he served nine months in jail and his state offense of selling marijuana (2 counts) in October 2005, for which he served 10 days in jail. PSR, ECF No. 211 ¶¶ 22, 25, 26. The career offender designation increased his criminal history category from III to VI and with his offense level of 6 based on drug weight, increased by two levels for obstruction of justice to 8, he had a sentencing range of 18–24 months. That range was added to the ranges established by the two § 924(c) convictions, which were 120 months and 300 months, respectively, making his guidelines range 438–444 months. USSG § 4B1.1(c); Ch 5 Pt. A.

---

[1] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

Without the career offender designation, Williams' offense level was 8 and he had a criminal history category of III, giving him a guidelines range of 6–12 months on Count One. USSG Ch. 5 Pt. A. Added to his guideline range for the firearm offenses (420 months), his guideline range was 426–432 months. PSR, ECF No. 211 ¶¶ 14-21, 29.

On October 22, 2010, Williams was sentenced to 18 months on Count One, 120 months on Count Two, and 300 months on Count Three, all to run consecutively, for a total of 438 months. J., ECF No. 75. Williams appealed his conviction, United States v. Williams, No. 10-5131 (4th Cir. filed Nov. 2, 2010), and on June 10, 2011, the government filed a motion to remand the case, arguing that although the jury found that Williams had on two separate occasions possessed a firearm in relation to a single drug-trafficking predicate, the policy of the Justice Department was that multiple violations of 18 U.S.C. § 924(c) may not be based upon a single predicate drug-trafficking offense. Id. at Doc. 42. On July 1, 2011, the Fourth Circuit Court of Appeals vacated Williams' sentence and remanded his case for resentencing. Id. at Doc. 47; ECF No. 95 in this case.

On remand, the government moved to dismiss Count Three of the indictment and the district court granted the motion on October 6, 2011. ECF Nos. 103, 104, 105. On October 18, 2011, the court resentenced Williams to 18 months on Count One and 342 months on Count Two, for a total of 360 months. Am. J., ECF No. 108. The court found that based on Williams' status as a career offender, his guidelines sentence on Count Two was 360 months to life. Sentencing Tr., ECF No. 114 at 3; PSR, ECF No. 111, ¶ 48. At the resentencing, the court stated the following:

> I mean, it's clear the defendant has just kind of run a drug business a good part of his adult life. But it seems to me it's been

4

a fairly small business, though. What the court sees [as] the overarching, most significant and most serious aspect of all this, not that running a drug business isn't serious enough, is the fact that the court views this as an effort to take the life of another human being. I mean that was involved in this case, that this was in response to what happened at the defendant's home.

The defendant . . . set out to track down and take the life of the person involved, and used an AK-47, or something of similar caliber, to inflict grievous bodily injury on another human being. And I consider that to be the most serious aspect.

And so the sentence the court is going to impose reflects the fact that the court views that to be the most important and significant aspect of this series of events. Yes, he used a firearm at least twice in the course of this, once a smaller handgun there at his home, but he also used . . . a high caliber weapon in an effort to take the life of another person, and, thereby, inflicted this grievous injury….

So the court emphasizes the protection of the public in the sentence the court imposes.

Sentencing Tr., ECF No. 114 at 10–11.

Williams appealed the sentence, and the Fourth Circuit Court of Appeals affirmed in an unpublished per curiam opinion. Doc: 74 in <u>United States v. Williams</u>, No. 10-5131 (4th Cir. ord. entered May 31, 2012); ECF Nos. 119, 120 in this case. Williams sought post-conviction relief via several motions filed pursuant to 28 U.S.C. § 2255, all of which were denied.

Williams filed two motions for compassionate release, with his primary contention being that if he were sentenced presently, he no longer would be considered a career offender, and that the difference in his status would result in a significantly shorter sentence, which would qualify as an extraordinary and compelling reason for a sentence reduction. <u>See</u> Mot., ECF No. 254. However, the district court did not address Williams' argument regarding his

career offender status, but denied relief based solely on the relevant factors set forth in 18 U.S.C. § 3553(a). Mem. Op., ECF No. 278 at 13–18. Williams has been incarcerated since his arrest and has a projected release date of September 28, 2035.[2]

## II. ANALYSIS

### A. 18 U.S.C. § 3582(c)(2) and USSG §1B1.10

Williams seeks a sentence reduction under 18 U.S.C. § 3582(c)(2). That provision of the statute provides that the court may not modify a term of imprisonment once it has been imposed except in certain circumstances:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), …, the court may reduce the term of imprisonment after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The applicable policy statement is found at USSG §1B1.10. In Dillon v. United States, 560 U.S. 817 (2010), the Court discussed the reach of § 3582(c)(2).

> By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the "modif[ication of] a term of imprisonment" by giving courts the power to "reduce" an otherwise final sentence in circumstances specified by the Commission. Compare 28 U.S.C. § 994(a)(2)(C) (referring to § 3582(c)(2) as a "sentence modification provisio[n]") with 18 U.S.C. § 3742(f) (authorizing courts of appeals to remand "for further sentencing" upon a finding of error) and § 3742(g) (establishing the terms of "sentencing upon remand" and describing the proceeding as a "resentenc[ing]" (capitalization omitted)). It is also notable that the provision applies only to a limited class of prisoners—namely, those whose

---

[2] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed April 9, 2024) (search "Chadriquez Williams").

> sentence was based on a sentencing range subsequently lowered by the Commission. Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding.

Id. at 825–26. Analysis of a § 3582(c)(2) motion requires courts to perform a two-step inquiry. "A court must first determine that a reduction is consistent with §1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." Id. at 826. In making the first determination, the court must determine the defendant's eligibility for a sentence modification and the extent of the modification. Id. at 827.

> Specifically, § 1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1).

Id. At step two of the inquiry, a court may consider any applicable § 3553(a) factors and determine whether, it its discretion, the reduction authorized in step one is warranted in whole or in part under the circumstances of the case. Id.

### B. Amendment 821

Williams argues that he is entitled to a sentence reduction under Amendment 821 to the guidelines. Effective November 1, 2023, the United States Sentencing Commission amended Chapter 4 of the sentencing guidelines which addresses a defendant's criminal history. See Amendment 821, USSG Supp. to App. C (Nov. 2023). The Commission made

7

Part A and Part B, Subpart 1, of Amendment 821 retroactively applicable, allowing eligible defendants to seek a discretionary sentence reduction under 18 U.S.C. § 3582(c)(2). See USSG §1B1.10(d).

Part A of Amendment 821 limits the overall criminal history impact of "status points," resulting in a reduced criminal history score. USSG §4A1.1(e). Under the earlier version of §4A1.1, subsection (d) provided that a defendant's criminal history score was increased by two points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." USSG §4A1.1(d) (Nov. 1987). Under the revised guideline, if a defendant received at least two status points, status points are decreased by one point for individuals with seven or more criminal history points and status points are eliminated for those with six or fewer criminal history points. See USSG §4A1.1(e) (Nov. 2023). In other words, defendants who had seven or more criminal history points now receive one status point, rather than two, and defendants with six or fewer criminal history points now receive no status points.[3]

Applying step one of the two-step inquiry under § 3582(c)(2), the court first must determine the amended guideline range that would have been applicable to Williams had Amendment 821 been in effect at the time of the initial sentencing. Dillon, 560 U.S. at 827. "'In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the

---

[3] The change implemented by Part B of Amendment 821 is found at USSG §4C1.1 and provides a decrease of two levels from the offense level determined under Chapters Two and Three for a defendant who did not receive any criminal history points under Chapter Four, Part A, and whose offense of conviction did not involve specific aggravating factors. Williams argues that he is entitled to a sentence reduction under Part A of Amendment 821 and makes no argument related to Part B.

defendant was sentenced and shall leave all other guideline application decisions unaffected.'"
Id. (quoting USSG §1B1.10(b)(1)).

Williams had 3 criminal history points based on marijuana distribution convictions for which he was serving probation at the time he committed the instant offense. He received two "status points," increasing his criminal history points to 5, which placed him in criminal history category III, and, coupled with his total offense level of 8, gave him a sentencing range of 6–12 months. PSR, ECF No. 211 ¶¶ 25–29. Applying the amended version of § 4A1.1, he would have only 3 criminal history points, which would reduce his criminal history category to II and reduce his sentencing range on Count One to 4–10 months. Id. at ¶ 27. His guidelines sentence on Count Two would be 120 months.

However, Williams was sentenced as a career offender under USSG §4B1.1. That provision of the guidelines provides that a defendant is a career offender if (1) the defendant was at least eighteen years old at the time he committed the instant offense, (2) the instant offense is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG §4B1.1(a). Williams was classified as a career offender based on his previous state court convictions for distribution of marijuana. PSR, ECF No. 211 ¶¶ 22, 25, 26. Classification as a career offender raises a defendant's criminal history category to VI. See USSG §4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI.") Because the statutory maximum sentence on Count Two was life, Williams' offense level was increased to 37. Id. His offense level of 37 together with

his criminal history category of VI gave him a guidelines range of 360 months to life on Count Two. USSG §4B1.1(c).

Under the plain language of USSG §1B1.10(b)(1), the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected. Therefore, because USSG §4B1.1 has not changed, the career offender designation continues to apply.

Williams agrees that §1B1.10(b)(1) presents a "hurdle" to his argument that he is entitled to a sentence reduction. Reply in Support of Sent. Reduction, ECF No. 314 at 2. Nevertheless, he contends that even though the career offender guideline has not changed, courts are not prevented from "applying subsequent, retroactively-applicable legal interpretations to those guidelines." Id.

Williams asks the court to apply the 2022 Fourth Circuit decision in United States v. Campbell, 22 F.4th 438 (4th Cir. 2023), to find he is no longer a career offender. In Campbell, the court found that the West Virginia statute criminalizing delivery of a controlled substance was not a controlled substance offense for purposes of the career offender guideline when calculating his guideline sentence. The Campbell case was on direct appeal and the defendant argued that he could not be sentenced as a career offender because the two predicate "controlled substance offenses" were a West Virginia conviction for delivery of crack cocaine in violation of W. Va. Code §§ 60A-1-101(h) and 60A-4-401(a), and a federal conviction for aiding and abetting distribution of cocaine base within 1,000 feet of a school. Campbell, 22 F.4th at 441. Applying the categorical approach, the court found that the "least culpable"

conduct criminalized by the West Virginia statute was "attempted transfer" of a controlled substance and that the definition of "controlled substance offense" in the guidelines did not include an attempt to deliver a controlled substance. Therefore, Campbell's conviction for a controlled substance offense under the categorical approach could not serve as a predicate offense for the career offender guideline.  Id. at 441–442, 449.[4]

Williams argues that the offenses for which he was convicted under the Virginia Code are not "controlled substance offenses" for purpose of the career offender predicate offense because the statutes include attempt offenses, which are broader than the definition of "controlled substance offense" in §4B1.2(b). Therefore, he argues, his marijuana convictions cannot serve as predicate offenses for the career offender designation. The government disagrees that the decision in Campbell rendered the Virginia statutes criminalizing distribution of marijuana inappropriate as predicates for the career offender designation, citing in support United States v. Groves, 65 F.4th 166 (4th Cir. 2023), and the cases that have followed it.

---

[4] At the time Campbell was decided, the commentary in the first application note to the career offender guideline stated that a controlled substance offense "includes the offenses of aiding and abetting, conspiring, and attempting to commit such offenses," while the language of the guideline itself identified a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance … or the possession of a controlled substance … with intent to manufacture, import, export, or dispense." Campbell, 22 F.4th at 441 (citing USSG § 4B1.2, appl. n. 1 and USSG § 4B1.2(b)). The issue on appeal was whether the language in the commentary to the guideline, which included attempt crimes in the definition of controlled substance offense, was authoritative when the text of the guideline itself did not contain the same definition. Relying on Stinson v. United States, 508 U.S. 36 (1993), the Fourth Circuit determined that the language in the commentary was not authoritative because it was plainly inconsistent with the text of the guideline. See discussion, 22 F.4th at 444–47. In the absence of the "attempting to commit" language in the text of the guideline, the court used the categorical approach to determine that the marijuana distribution statute was too broad to serve as a predicate offense. When the Sentencing Commission revised the guidelines in 2023, it moved the "attempting to commit" language to the main text of the guideline. See USSG § 4B1.2(d) (Nov. 2023). Therefore, the issue presented in Campbell has been resolved and "attempt" crimes now qualify as predicate offenses for the career offender guideline.

The court finds that <u>Campbell</u> did not invalidate the use of Va. Code 18.2-248 as a predicate for the career offender guideline in §4B1.2. First, the Fourth Circuit found in <u>United States v. Ward</u>, 972 F.3d 364 (4th Cir. 2020), that convictions under Va. Code § 18.2-248 "categorically qualify under the ordinary meaning of 'controlled substance offense' in USSG § 4B1.2(b)." Second, unlike the statute at issue in West Virginia, the Virginia criminal code contains a separate attempt statute for distribution of controlled substances, Va. Code § 18.2-257, which makes engaging in attempted drug distribution a separate offense. If Va. Code § 18.2-248 were construed to cover attempt offenses, Va. Code § 18.2-257 would be rendered superfluous.

Finally, the court finds that an "attempted transfer" constitutes a <u>completed</u> distribution offense, as opposed to the attempted drug distribution made illegal by Va. Code 18.2-257. Virginia Code § 54.1-3401 defines "distribute" as "a means to deliver other than by administering or dispensing a controlled substance," and defines "deliver" or "delivery" as "the actual, constructive, or attempted transfer of any item regulated by this chapter, …." Thus, the definition of "distribute" includes "delivery," which in turn includes an attempted transfer, meaning that under the Virginia statute, an "attempted transfer" is a "distribution." Therefore, the Virginia drug distribution statute is not overly broad and falls within the definition of "controlled substance offense" in USSG § 4B1.2(b).

The Fourth Circuit made a substantively identical finding in <u>United States v. Davis</u>, 75 F.4th 428, 442–43 (4th Cir. 2023), when examining a similar South Carolina statute. In <u>Davis</u>, the defendant argued that <u>Campbell</u> precluded his state court convictions for drug distribution from qualifying him as a career offender because § 44-53-375(b) of the South Carolina Code

12

criminalized the offense of "attempted distribution," which, he argued, made the language broader than the definition in USSG §4B1.2(b). The court disagreed, finding "distribute" was defined as "to deliver (other than by administering or dispensing) a controlled substance," and "deliver" was defined as "the actual, constructive, or <u>attempted transfer</u>" of a controlled substance. <u>Id.</u> (citing S.C. Code Ann. § 44-53-110(10). Relying on those definitions, the court rejected the defendant's argument that an "attempted transfer" was the same as an "attempted distribution."

> Put simply, we disagree with and reject Davis's contention. A "distribution" under section 44-53-375(B) of the South Carolina Code is a completed offense, not an attempt offense. And that is so because South Carolina law codifies the offense of attempted distribution separately from a completed distribution offense. Indeed, within the same statutory provision, a person may be charged under South Carolina law with "distribut[ing] ... cocaine base ... or ... attempt[ing] ... to distribute ... cocaine base." <u>See</u> S.C. Code Ann. § 44-53-375(B). Although the definition of "distribute" includes the "delivery" act of "attempted transfer," accepting Davis's position would render the word "attempt" — as otherwise utilized in South Carolina Code section 44-53-375(B) — wholly superfluous. And to avoid that superfluity, an "attempted transfer" under South Carolina law must constitute a completed distribution.

<u>Davis</u>, 75 F.4th at 443. The South Carolina statute is materially indistinguishable from the Virginia statute and this court similarly finds that an "attempted transfer" under Va. Code § 18.2-248 is a completed distribution.

Moreover, even if Va. Code § 18.2-248 were not a valid predicate for the career offender guideline, § 3582(c)(2) is not the proper vehicle for challenging a career offender designation. Williams argues that the language in USSG §1B1.10(b)(1) -- "in determining an amended guideline range, the court will use only those amendments expressly designated as

retroactive"-- was intended to assure that §1B1.10 did not provide a mechanism to apply a nonretroactive guideline amendment and was not intended to preclude a court from applying "subsequent, retroactively-applicable legal interpretations to those guidelines." Reply, ECF No. 314 at 2. In support, he cites to commentary issued by the Sentencing Commission when §1B1.10 was revised in 1994, that "[t]his amendment clarifies the operation of §1B1.10 by providing that, in determining an amended guideline range, the court will use only those amendments expressly designated as retroactive." Reply, ECF No. 314 at 2 (citing Amendment 504, United States Sentencing Guidelines, effective Nov. 1, 1994, available at https://www.ussc.gov/guidelines/amendment/504). He also cites to minutes from a public meeting held on December 11, 2007, which he says indicate that the Sentencing Commission did not intend to impose significant additional limitations on § 1B1.10 when it adopted Amendment 712. Id. at 3 (citing U.S. Sentencing Commission Public Meeting Minutes, Dec. 11, 2007, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20071211/20071211_Minutes.pdf, at 1).[5]

---

[5] Williams also cites a comment by Jonathan J. Wroblewski, Director of the Office of Policy and Legislation in the Criminal Division of the United States or Department of Justice, included in a letter to the Sentencing Commission arguing against making Amendment 821 retroactive. Mr. Wroblewski wrote that "The Commission has previously disfavored retroactive application of amendments—like this one—that would require comprehensive fact-finding after a lengthy passage of time." See Department of Justice, Public Comment on Possible Retroactive Application of Parts A and B, June 23, 2023. https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/202306/88FR28254_public-comment.pdf#page=33. Williams asks the court to deduce from this comment that it has authority to apply the holding in Campbell in this § 3582 motion to find that Williams should not have been sentenced as a career offender, but the comment simply does not support that deduction, if for no other reason than there is no factual finding to be made in Williams' case. Rather, he is asking the court to apply the legal conclusion from Campbell to his predicate offenses. Williams also asserts that comments made at the August 24, 2023, public meeting of the Sentencing Commission that pre-sentence reports that were created prior to the "Zero-Point Amendment," i.e., Part B of Amendment 821, would not contain enough information to determine eligibility under that revised guideline. See United States Sentencing Commission, August 24, 2023 Public Meeting Minutes at 16, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230824/minutes.pdf. However, that comment was made during a discussion of eligibility of

It is indisputable that the Sentencing Commission did not intend for courts to apply non-retroactive guideline amendments retroactively. However, that fact does not lead to the conclusion that the Sentencing Commission did intend for courts to apply "subsequent, retroactively-applicable legal interpretations" to the guidelines as part of a §3582(c)(2) analysis. Reply, ECF No. 314 at 2. Williams offers no authority, other than the language in <u>Rivers v. Roadway Express, Inc.,</u> 511 U.S. 298, 312–313 (1994), that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction[,]" to support his assertion that a court can do so. But his assertion is contrary to the plain language of the statute, which contemplates only that a court may consider a sentence reduction when the Sentencing Commission has reduced a sentencing range and made the reduction retroactive. Neither 18 U.S.C. § 3582(c)(2) nor USSG §1B1.10 contains any language from which a court could infer that it has authority to make a redetermination of career offender status in this context. Indeed, commentary to § 1B1.10 states that the authorization of a discretionary retroactive sentence reduction "does not otherwise affect the lawfulness of a previously imposed sentence" and "does not authorize a reduction in any other component of the sentence." USSG §1B1.10, comment. (n.9).

Courts which have examined this issue have reached this conclusion. <u>See</u> <u>United States v. Warner</u>, 772 F. App'x 94 (5th Cir. 2019) (per curiam) (finding that because under § 3582(c)(2) relief may only be obtained based on retroactive amendments listed in § 1B1.10(d),[6]

---

defendants for a sentence reduction under Part B of Amendment 821 and refers to how a court will determine whether a defendant meets the criteria for the adjustment. Williams is not seeking relief under Part B and the court need not do any fact-finding to determine his eligibility under Part A. The comment does not otherwise confer authority on the court to find that Williams is no longer a career offender.
[6] Now § 1B1.10(e).

and that proceedings under § 3582(c)(2) do not entitle a defendant to a full resentencing, "a § 3582(c)(2) motion is not the proper vehicle for [the defendant] to challenge the application of the career offender guideline."); <u>United States v. Foster</u>, 714 F. App'x 285 (4th Cir. 2018) (per curiam) (finding in context of Amendment 750 sentence reduction that insofar as the defendant was attempting to challenge the validity of his career offender enhancement, "a § 3582(c)(2) proceeding is not an appropriate vehicle for such a challenge."); <u>United States v. Goldman</u>, 693 F. App'x 817, 820 (11th Cir. 2017) (finding in context of Amendment 782 sentence reduction that "to the extent that [the defendant] challenges his status as a career offender, his arguments are not cognizable in a § 3582(c)(2) proceeding"); (<u>United States v. Trice</u>, No. 7:13CR00034-001, 2021 WL 402462, at *2 (W.D. Va. Feb. 3, 2021) (rejecting defendant's request to find that he was not a career offender at the time of sentencing or presently and therefore was incorrectly sentenced because a § 3582(c)(2) proceeding was not an appropriate vehicle for such a challenge).

That a court cannot consider a challenge to career offender status in a § 3582(c)(2) motion is consistent with long-standing precedent that a defendant convicted in federal court who wishes to challenge the validity of his judgment and sentence must do so by filing a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, or, where appropriate, § 2241. <u>In re Vial</u>, 115 F.3d 1192, 1194 (4th Cir. 1997). The Fourth Circuit reiterated this holding in <u>United States v. Ferguson</u>, 55 F.4th 262, 270 (4th Cir. 2022). There, a defendant brought a compassionate release motion where he argued, among other grounds, that the jury instruction in his case was faulty, that the government failed to inform him of the applicable penalty on one of his counts, that his guidelines range was calculated incorrectly, and that he received

ineffective assistance of counsel. Id. at 266. The court held that the defendant's attempt to collaterally attack his convictions and sentence via a compassionate release motion "ignore[d] the established procedures for doing so," namely, 28 U.S.C. § 2255 and when § 2255 is inadequate or ineffective, 28 U.S.C. § 2241. Id. at 270.

> Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements. "A habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute." Gonzalez v. Crosby, 545 U.S. 524, 531, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005); see United States v. Winestock, 340 F.3d 200, 207 (4th Cir. 2003) ("[A] motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application ...."). "In order for these limitations to be effective, courts must not allow prisoners to circumvent them by attaching labels other than 'successive application' to their pleadings." Winestock, 340 F.3d at 203 (citing Calderon v. Thompson, 523 U.S. 538, 553, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)). In other words, no matter how an inmate characterizes his request for relief, the substance of that request controls. If in substance he attacks his conviction and/or sentence, his filing is subject to the rules set forth in § 2255. "Insisting that defendants use the correct process to challenge their convictions and sentences," … "is not empty formalism." United States v. Sanchez, 891 F.3d 535, 539 (4th Cir. 2018).

Ferguson, 55 F.4th at 270–71 (emphasis added).

In this case, Williams seeks to collaterally attack the sentence that was imposed in his case under the guise of his § 3582(c)(2) motion. However, there is no authority to support his

contention that he can challenge that judicial determination in the context of a motion for a sentence reduction based on an amendment to the sentencing guidelines.[7]

Accordingly, because the court finds that the Virginia drug distribution statute is a valid career offender predicate, and, in the alternative, because Williams cannot challenge his status as a career offender via this Amendment 821 motion, the court must **DENY** his motion for a sentence reduction.

### III. CONCLUSION

Based on the foregoing, the court concludes that Williams is not entitled to relief on his motion brought pursuant to 18 U.S.C. § 3582(c)(2) and, therefore, his motion, ECF No. 286, is **DENIED**.

An appropriate order will be entered.

It is so **ORDERED**.

Entered:  April 18, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.04.18 18:36:10 -04'00'

Micheal F. Urbanski
Chief United States District Judge

---

[7] As the court does not find that Williams is eligible for a sentence reduction at the first step of the two-step inquiry, it does not address the § 3553(a) factors.

18