CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAY 02 2025
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 4:09-cr-00039 |
| v. | ) | |
| | ) | By:    Michael F. Urbanski |
| CHADRIQUEZ DEVON WILLIAMS, | ) | Chief United States District Judge |
| Defendant-Petitioner | ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Chadriquez Devon Williams' pro se motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). ECF No. 286. This is Williams' second motion for a sentence reduction, his first having been denied by this court on November 28, 2022. ECF Nos. 278, 279. The government has responded to Williams' pending motion and Williams has replied. ECF Nos. 320, 321. For the reasons stated herein, the court will **DENY** Williams' motion.

### I. BACKGROUND

This case arose out of incidents that occurred on August 28, 2009. According to the Presentence Investigation Report (PSR) filed in this case, Omar Turner met with Williams wanting to purchase two ounces of marijuana. An argument ensued over the quantity and price of marijuana to be sold and Turner pushed Williams to the ground and grabbed a bookbag that contained the marijuana. Turner ran from the house and fell on the porch. As he tried to get up, Williams began shooting at Turner from inside the house. Turner ran to his vehicle and drove away without being harmed. PSR, ECF No. 211 ¶ 4.

Turner went to his house, where he was joined by Michael Hudson, and the two began to smoke marijuana. Later in the day, Turner and Hudson were walking to Hudson's apartment

when Turner noticed Williams stepping out of a car. Williams raised a rifle and began shooting. Turner managed to escape without injury, but Williams shot Hudson in the finger, thigh, and right testicle. Id. ¶¶ 5–10. Hudson incurred $52,706.34 in medical bills and suffered from psychological issues after the shooting. Id. ¶ 10.

On November 11, 2009, a Grand Jury returned an indictment charging Williams with the following offenses: (1) Knowingly and intentionally possessing with the intent to distribute a measurable quantity of a mixture or substance containing marijuana, a Schedule I narcotic, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count One); (2) Knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime which may be prosecuted in a Court of the United States, as set forth in Count One, and did discharge the firearm, in violation of 18 U.S.C. § 924(c) (Count Two); and (3) At a time and place different from that set out in Count Two of the indictment, knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime which may be prosecuted in a Court of the United States, as set forth in Count One, and did discharge the firearm, in violation of 18 U.S.C. § 924(c) (Count Three). Indictment, ECF No. 3.

On July 20, 2010, the government gave notice of enhanced punishment pursuant to 21 U.S.C. § 851.[1] The notice was based on Williams' three previous felony convictions for sale of marijuana in the Circuit Court of Martinsville City, Virginia. Notice, ECF No. 50. On August

---

[1] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

2

4, 2010, a jury returned a verdict finding Williams guilty on all counts. Verdict, ECF No. 64.

On Count One, Williams faced a statutory maximum prison term of 10 years. 21 U.S.C. § 841(b)(1)(D).[2] On Count Two, he faced a term of 10 years to life and on Count Three, he faced a term of 25 years to life. 18 U.S.C. § 924(c)(1)(A)(iii); 18 U.S.C. § 924(c)(1)(C)(i). Williams' sentencing range under the United States Sentencing Guidelines ("USSG" or "guidelines") was 438–444 months. This range was based on Williams' status as a career offender under USSG §§ 4B1.1(a) and 4B1.1(c)(2)(A). The prior felony convictions that qualified him as a career offender were his state offense of distribution of marijuana (5 counts) in March 2005 for which he served nine months in jail and his state offense of selling marijuana (2 counts) in October 2005, for which he served 10 days in jail. PSR, ECF No. 211 ¶¶ 22, 25, 26. The career offender designation increased his criminal history category from III to VI and with his offense level of 6 based on 19.65 grams of marijuana, increased by two levels for obstruction of justice to 8, he had a sentencing range of 18–24 months. That range was added to the ranges established by the two § 924(c) convictions, which were 120 months and 300 months, respectively, USSG § 4B1.1(c), giving him a guidelines range of 438–444 months. PSR, ECF No. 47.

Without the career offender designation, Williams' offense level on Count One was 8 and he had a criminal history category of III, giving him a guidelines range of 6–12 months. USSG Ch. 5 Pt. A. Added to his guidelines range for the firearm offenses (420 months), his guideline range was 426–432 months. PSR, ECF No. 211 ¶¶ 14-21, 29.

---

[2] The statutory maximum sentence on Count One was increased from 5 years to 10 years because of Williams' previous conviction for a felony drug offense. See 21 U.S.C. § 841(b)(1)(D) and ECF No. 50.

3

On October 22, 2010, Williams was sentenced to 18 months on Count One, 120 months on Count Two, and 300 months on Count Three, all to run consecutively, for a total of 438 months. J., ECF No. 75. Williams appealed his conviction, United States v. Williams, No. 10-5131 (4th Cir. filed Nov. 2, 2010), and on June 10, 2011, the government filed a motion to remand the case, arguing that although the jury found that Williams had on two separate occasions possessed a firearm in relation to a single drug-trafficking predicate, the policy of the Justice Department was that multiple violations of 18 U.S.C. § 924(c) may not be based upon a single predicate drug-trafficking offense. Id. at Doc. 42. On July 1, 2011, the Fourth Circuit Court of Appeals vacated Williams' sentence and remanded his case for resentencing. Id. at Doc. 47; ECF No. 95 in this case.

On remand, the government moved to dismiss Count Three of the indictment and the district court granted the motion on October 6, 2011. ECF Nos. 103, 104, 105. On October 18, 2011, the court resentenced Williams to 18 months on Count One and 342 months on Count Two, for a total of 360 months. ECF No. 108. The court found that based on Williams' status as a career offender, his guidelines sentence on Count Two was 360 months to life. Sentencing Tr., ECF No. 114 at 3. At the resentencing, the court stated the following:

> I mean, it's clear the defendant has just kind of run a drug business a good part of his adult life. But it seems to me it's been a fairly small business, though. What the court sees [as] the overarching, most significant and most serious aspect of all this, not that running a drug business isn't serious enough, is the fact that the court views this as an effort to take the life of another human being. I mean that was involved in this case, that this was in response to what happened at the defendant's home.
>
> The defendant . . . set out to track down and take the life of the person involved, and used an AK-47, or something of similar

4

> caliber, to inflict grievous bodily injury on another human being. And I consider that to be the most serious aspect.
>
> And so the sentence the court is going to impose reflects the fact that the court views that to be the most important and significant aspect of this series of events. Yes, he used a firearm at least twice in the course of this, once a smaller handgun there at his home, but he also used . . . a high caliber weapon in an effort to take the life of another person, and, thereby, inflicted this grievous injury. . . .
>
> So the court emphasizes the protection of the public in the sentence the court imposes.

Sentencing Tr., ECF No. 114 at 10–11.

Williams appealed the sentence, and the Fourth Circuit Court of Appeals affirmed in an unpublished per curiam opinion. Doc: 74 in United States v. Williams, No. 10-5131 (4th Cir. ord. entered May 31, 2012); ECF Nos. 119, 120 in this case. Williams sought post-conviction relief via several motions filed pursuant to 28 U.S.C. § 2255, all of which were denied. Williams is incarcerated at Federal Correctional Institution (FCI) Fort Dix and has a projected release date of September 28, 2035.[3]

## II. ANALYSIS

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

---

[3] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed March 11, 2025) (search "Chadriquez Williams").

> defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Williams' requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.[4]

## A. Exhaustion

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131.

Williams submitted a compassionate release request to the warden at his facility on June 6, 2023, and filed his motion for compassionate release more than thirty days later. Inmate Request to Staff, ECF No. 386-3. The government does not dispute that Williams has satisfied

---

[4] In Williams' first motion for compassionate release, he raised many of the same arguments he raises herein. However, the court denied his motion based solely on the 28 U.S.C. § 3553(a) factors and did not address whether he showed an extraordinary and compelling reason for a sentence reduction.

6

this threshold requirement. Opp. to Mot. to For Compassionate Release, ECF No. 320. Therefore, the court finds that Williams has fully satisfied the statute's administrative exhaustion requirement.

### B. Extraordinary and Compelling Reason

The court next must consider whether it should reduce the term of imprisonment. Effective November 1, 2023, the United States Sentencing Commission amended the policy statement that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that extraordinary and compelling reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023) (USSG or guidelines). The revised policy statement will be applied to Williams' motion.

Williams asserts the following grounds for a sentence reduction: (1) If he were sentenced today his sentence would be much shorter because he no longer would be considered a career offender; (2) he needs to be released to take care of his teenage daughter who is disabled; (3) the dangers presented by the COVID-19 pandemic; (4) unusually harsh prison conditions and (5) his successful efforts at rehabilitation.

### (1) Career Offender Status

The revised policy statement addresses when an "unusually long sentence" can be a reason for a court to grant a sentence reduction under § 3582(c)(1)(A). A defendant is eligible for a sentence reduction if he can show the following:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but

7

> only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) Limitation on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §§ 1B1.13(b)(6) and (c).

Williams has served at least 10 years of his sentence and therefore meets the first criteria for a sentence reduction. He argues that under changes to the law that have occurred since he was convicted, if he were sentenced today, he no longer would be a career offender, and his sentence would be much shorter.

Williams was sentenced as a career offender under USSG §4B1.1. That provision of the guidelines provides that a defendant is a career offender if (1) the defendant was at least eighteen years old at the time he committed the instant offense, (2) the instant offense is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG §4B1.1(a). "Controlled Substance Offense" is defined in relevant part as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) prohibits the manufacture, import, export, distribution, or dispensing of a controlled

8

substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense[.]"

The predicate offenses underlying Williams' classification as a career offender were his previous state court convictions for distribution of marijuana. PSR, ECF No. 211 ¶¶ 22, 25, 26. Classification as a career offender raises a defendant's criminal history category to VI. See USSG §4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI.") Because the statutory maximum sentence on Count Two was life, Williams' offense level was increased to 37. Id. His offense level of 37 together with his criminal history category of VI gave him a guidelines range of 360 months to life on Count Two. USSG §4B1.1(c).

Williams argues that he would not be considered a career offender if sentenced today because he did not serve more than one year on any of his marijuana convictions. ECF No. 286-1 at 13. However, the definition of "controlled substance offense" does not require that a person have served more than one year on the predicate conviction. Rather, it requires that the offense be punishable by a term of imprisonment greater than one year.[5]

The PSR indicates that Williams' distribution of marijuana conviction, for which he served 9 months, was based on five sales of marijuana to an undercover officer. The sales involved 7.44 ounces, 7.34 ounces, 7.3 ounces, 7.17 ounces, and 5.79 pounds, for a total of

---

[5] Williams may be confusing the requirements for an offense to qualify as a predicate offense for the purposes of a career offender sentence increase under the guidelines, which requires that an offense be punishable by a term of one year, with the requirement for an increased sentence under 21 U.S.C. §§ 841(b)(1)(A)-(C). In order for a defendant to be subject to an increase under the statute, he must have been convicted of a "serious drug felony," which is defined in relevant part as an offense under state law involving possessing with intent to distribute a controlled substance with a maximum term of imprisonment of ten years or more and for which the defendant served a term of imprisonment of more than 12 months. 21 U.S.C. § 802(58) (citing 18 U.S.C. § 924(e)(2)).

9

7.62 pounds. PSR, ECF No. 211 ¶ 25. Williams' second conviction in 2005, for which he served 10 days in jail, involved two counts of the sale of marijuana, with the first count involving 53.9 grams, or 1.90 ounces of marijuana, and the second count involving 54.5 grams or 1.92 ounces of marijuana. Id. ¶ 26. Distribution of marijuana involving more than one ounce, but not more than five pounds of marijuana is a Class 5 felony punishable by a term of not less than one year or more than ten years and distribution of more than five pounds of marijuana is punishable by imprisonment of not less than five years or more than forty years. Va. Code §§ 18.2-248.1(2) and (3); 18.2-10.[6] Accordingly, both underlying predicate offenses were punishable by terms exceeding one year, qualifying them as controlled substance offenses for purposes of the career offender guideline. See also United States v. Ward, 972 F.3d 364 (4th Cir. 2020) (holding that that convictions under Va. Code § 18.2-248 "categorically qualify under the ordinary meaning of 'controlled substance offense' in USSG § 4B1.2(b)") and United States v. Guerrant, 849 F. App'x 410, 412 (4th Cir. 2021) (per curiam) (finding defendant's Virginia conviction for possession of marijuana with intent to distribute in violation of Va. Code. Ann. § 18.2-248.1 was a controlled substance offense as defined by USSG §§ 4B1.1, 4B1.2). Accordingly, Williams' underlying marijuana convictions qualify as predicate offenses for purposes of the career offender enhancement, and he would continue to be subject to the career offender designation today. Accordingly, he cannot show a gross disparity between the sentence he received in 2010 and the sentence he likely would receive today.

---

[6] At the time Williams committed his offense, a half ounce of marijuana was sufficient to trigger the penalties listed in Va. Code. § 18.2-248.1 (2006). The minimum amount of marijuana to trigger the penalties was increased to 1 ounce in 2020.

10

### (2) Caring For His Daughter

Williams next asserts that his teenage daughter has become disabled following a case of meningitis which left her unable to stand or walk without assistance. In addition, she needs bilateral hip replacement surgery and deals with anxiety and depression. Defendant claims that he will become his daughter's full-time caregiver if he is released. A defendant may show an extraordinary and compelling reason for a sentence reduction based on family circumstances when he can show the following:

> **Family Circumstances of the Defendant.—**
>
> **(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

USSG § 1B1.13(b)(3).

Although Williams describes his daughter's health issues, he neither alleges nor provides any evidence that her current caregiver has died or become incapacitated. Without doing so, Williams cannot make out a claim that he is entitled to a sentence reduction based on his daughter's health issues. The court is sympathetic to the difficulties faced by Williams' daughter and to Williams' desire to care for her. However, the court cannot grant a sentence reduction in the absence of allegations and proof that the person who currently cares for his daughter has become incapacitated. Accordingly, Williams cannot show an extraordinary and compelling reason for a sentence reduction based on his daughter's health issues.

### (3) The COVID-19 Pandemic

Williams argues that he is entitled to a sentence reduction because of the COVID-19 pandemic. Under the revised policy statement, to demonstrate an extraordinary and

11

compelling reason for a sentence reduction based on an outbreak of an infectious disease a defendant must show the following:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

USSG § 1B1.13(b)(1)(D).

Williams cannot make this showing because he cannot show either that FCI Fort Dix is affected by an outbreak of an infectious disease, or that an ongoing public health emergency is currently in effect as declared by a federal, state, or local authority. As of January 21, 2025, the last date for which data is available, FCI Fort Dix had one open case of COVID-19 out of 4001 inmates.[7] In addition, on May 11, 2023, the United States Department of Health and Human Services announced the end of the public health emergency caused by the COVID-19 pandemic.[8] Moreover, even if Williams could show the existence of the first two conditions, he has not described any medical conditions from which he suffers that show he is at increased risk of suffering severe medical complications or death due to COVID-19 that cannot be adequately mitigated in a timely manner. For these reasons, the court concludes that Williams

---

[7] https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last viewed March 13, 2025).

[8] https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html

has not shown an extraordinary and compelling reason for a sentence reduction. Accordingly, his motion for a sentence reduction based on the COVID-19 pandemic is **DENIED**.

### (4) Unusually Harsh Prison Conditions

Williams asserts that he has experienced unusually harsh prison conditions because of lockdown measures taken to control the spread of COVID-19. He claims that severe staff shortages create an unsafe environment for staff and inmates and result in frequent lockdowns that disrupt rehabilitation, work programs, and medical services.

The revised guidelines do not contemplate that prison conditions can be a ground for a sentence reduction.[9] Also, courts have held that harsh prison conditions, whether due to the pandemic or other factors, do not justify a reduced sentence. See, e.g., United States v. Campbell, No. ELH-14-0058, 2022 WL 17105175 at *13–14 (D. Md. Nov. 21, 2022) ("General hardships due to COVID-19 do not constitute an extraordinary and compelling circumstance that warrants an inmate's release."); United States v. Fuentes, No. 2:19cr109, 2022 WL 3581392, at *9 (E.D. Va. Aug. 19, 2022) (acknowledging that COVID-19 limited educational and rehabilitative programming, but finding defendant did not show that such circumstances were extraordinary); United States v. Graham, No. 3:12-cr-00188-FDW-DSC, 2022 WL 1632168, at *4 (W.D.N.C. May 23, 2022) ("There is no evidence before the Court tending to show Defendant's current prison conditions provide a factual or legal basis for a sentence reduction under this record, and the Court's role is not to micromanage the BOP's

---

[9] The guidelines do provide that a defendant who shows that he has a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at serious risk of deterioration in health or death, and a defendant who establishes that he is the victim of physical or sexual assault by a prison staff person, may be entitled to a sentence reduction. USSG §§1B1.13(b)(1)(C) and (b)(4). Williams has not made either of these allegations.

13

regulations as it relates to the COVID-19 virus."); and United States v. Bryant, No. 3:04-cr-00047-01, 2022 WL 1094731, at *4 (W.D. Va. April 12, 2022) ("[W]hile the conditions at FCI McDowell might be somewhat more onerous for prisoners than they would be in the absence of the pandemic, they are not unusually arduous to the extent that the Court could hold that they constitute extraordinary and compelling reasons for release."). As Williams cannot make out a claim for compassionate release based on prison conditions, his motion based on these allegations is **DENIED**.

### (5) Rehabilitation

Williams tells the court that he is very remorseful about his past conduct and apologizes to the court, the community, the families he harmed, and to his own family. He claims that he has taken part in every rehabilitation program that has been available to him and that his recidivism rate as calculated by the Bureau of Prisons is "low." He included a letter from his UNICOR supervisor describing him as "much better than average" in all aspects of his job. His supervisor stated that Williams is "a valuable asset who goes above and beyond" and "excels at every task given." He also is willing to work overtime and is a "model employee." ECF No. 286-2 at 6. While Williams has made great strides toward rehabilitation and appears committed to turning his life around, the guidelines do not allow a court to grant a sentence reduction based on rehabilitation.

The relevant revised guideline provides the following:

> **Rehabilitation of the Defendant**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent

14

> a reduction in the defendant's term of imprisonment is warranted.

USSG § 1B1.13(d). While Williams' efforts at rehabilitation are impressive, without showing an extraordinary and compelling ground for a sentence reduction based on a reason listed under USSG § 1B1.13, he cannot show that he is entitled to a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). As he has not done so, his motion for a sentence reduction must be **DENIED**.

### C. 18 U.S.C. § 3553(a) Factors

The court denied Williams' first motion for compassionate release based solely on the 18 U.S.C. § 3553(a) factors without considering whether he had shown an "extraordinary and compelling" reason for a sentence reduction. See Mem. Op., ECF No. 278. In the court's assessment of the pending motion, it has determined that Williams has not shown an extraordinary and compelling reason for a sentence reduction. Therefore, the court need not assess the § 3553(a) factors. See United States v. Bethea, 54 F.4th 826, 833 (4th Cir. 2022) (describing the "extraordinary and compelling" reasons for relief as a threshold for eligibility); United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.")

Nevertheless, the court notes that the facts underlying Williams' conviction remain egregious and continue to weigh against a sentence reduction. More positively, Williams has not had an institutional infraction since March 24, 2022, which is a positive turnaround from the six infractions he had from 2012 through 2022. The court also notes the praise Williams received from his supervisor in the UNICOR job, and that he is making monthly restitution

15

payments. ECF Nos. 286-2 at 3, 6; ECF No. 320-1. While giving Williams credit for what appear to be sincere attempts at working hard and following the rules of the institution, the court nevertheless finds that the § 3553(a) factors continue to weigh against a sentence reduction.

### III. CONCLUSION

For the above-stated reasons, the court **DENIES** Williams's motion for a sentence reduction, ECF No. 286. An appropriate order will be entered.

The Clerk is directed to send a copy of this memorandum opinion and order to Williams.

It is so **ORDERED**.

Entered: May 7, 2025

Michael F. Urbanski
Chief United States District Judge